**ARGO COLLIER TRUCK LINES CORPORATION, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Alabama Highway Express, Inc., and Gordons Transports, Inc., Intervening Defendants.**

Civ. A. No. 4612.

United States District Court
W. D. Tennessee, W. D.

June 12, 1967.

---

Joseph M. Scanlan, Chicago, Ill., Fitzhugh, Pittman, Clay, Cole & Gilliland, Memphis, Tenn., for Argo Collier Truck Lines Corp.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., Thomas L. Robinson, U. S. Atty., Memphis, Tenn., for the United States.

Robert W. Ginnane, Gen. Counsel, Nahum Litt, Atty., I. C. C., Washington, D. C., for Interstate Commerce Commission.

Wrape & Hernley, Washington, D. C., and Memphis, Tenn., and Robert E. Joyner, Memphis, Tenn., for intervening defendants Alabama Highway Express, Inc. and Gordons Transports, Inc.

## OPINION

Before PHILLIPS, Circuit Judge, BROWN, Chief Judge, and McRAE, Judge.

BAILEY BROWN, Chief Judge.

This is an action to enjoin and set aside certain orders of the Interstate Commerce Commission pursuant to 28 U.S.C.A., Secs. 1336, 1398, 2284 and 2321 through 2325. Jurisdiction, venue and this three-judge court are provided for by the foregoing statutes. Gordons Transports, Inc. and Alabama Highway Express, Inc. have intervened as defendants.

Plaintiff, Argo Collier Truck Lines Corp., a common carrier by motor vehicle, filed an application in 1959 with the I.C.C. (docket no. MC–41404 (Sub-No. 18)) for an extension of its authority, which, if granted, would permit it to transport for any shipper, as a common carrier by motor vehicle over irregular routes, cleaning compounds, washing compounds, soap, soap products, lye, lime, shortening, vegetable oils, vegetable oil compounds, glycerine, and oleomargarine from Chicago, Illinois to five southeastern states. Concurrently, Argo filed a motion to dismiss on the ground that it already had this authority by virtue of a certificate granted by the I.C.C. in an extension proceeding in 1952 (docket no. MC–41404 (Sub-No. 9)). This certificate granted authority to Argo to transport:

"*The commodities* classified as (a) meats, meat products, and meat by-products, and (b) dairy products, and (c) articles distributed by meat-packing houses, in the appendix to the report in Modification of Permits— Packing House Products, 46 M.C.C. 23, and *canned and preserved foodstuffs* other than those classified as (a), (b), and (c), from Chicago, Ill., to Paducah and Fulton, Ky., and points in Alabama, Louisiana, Mississippi, Georgia, and Tennessee."

The appendix to the report of the I.C.C. in Modification of Permits—Packing House Products, 46 M.C.C. 23, referred to in this certificate, contains a part "A" headed "Meats, Meat Products and Meat By-Products," a part "B" headed "Dairy Products" and a part "C" headed "Articles distributed by Meat-Packing Houses," and under each such heading is a list of commodities. A copy of the appendix to the *Modification* report is attached as an appendix to this opinion.

It appears that Argo, since the issuance of this certificate in 1952, has hauled some of the involved commodities produced and shipped by such firms as Glidden Company and Lever Brothers Company, which are not meat packers, and this had become a substantial part of Argo's business when it filed the application for extension of its authority in 1959.

It has been the contention of Argo that it already had the authority to transport the involved commodities for any shipper, irrespective of whether the shipment had in fact been manufactured or distributed in the first instance by a meat packinghouse, by virtue of the above set out certificate and particularly by virtue of the reference therein to part C of the appendix. It appears to be the final ruling of the I.C.C. that Argo may transport commodities described in part C for any shipper, but only if the shipment has in fact been manufactured or distributed in the first instance by a meat packinghouse. It is the enforcement of this ruling that Argo seeks to have enjoined.

A brief account of the proceedings before the I.C.C. and in this court is necessary to complete the background.

The hearing examiner recommended that the motion to dismiss the application be denied on the ground that the certificate did not grant authority to transport the commodities listed on the appendix to the *Modification* report for shippers who were not meat packinghouses. The examiner also recommended that the application for extended authority be denied on the ground that public convenience and necessity did not require this service by Argo. Division 1 of the I.C.C. in 1960 adopted both recommendations of the examiner and so ruled (83 M.C.C. 433). In 1961, the full Commission, on petition of Argo, reopened the Sub-No. 18 proceeding and, on its own motion, reopened the prior Sub-No. 9 proceeding, to be considered jointly. It then rul-

ed (88 M.C.C. 253) that public convenience and necessity with respect to Argo's sought-for authority had not been shown. It further ruled that, the certificate not being patently ambiguous, it could not go behind the certificate, but it did consider the proof offered in 1952 in the Sub-No. 9 proceeding in determining whether the certificate should be modified and extended. Based upon testimony of non-meat packing shippers of their need of Argo's service with respect to "dairy products" and "shortening," it amended the certificate by adding authority to transport these products for any shipper. (There was no support in the Sub-No. 9 proceeding, the Commission found, by non-meat packing shippers with respect to the commodities involved here except for "dairy products" and "shortening.") Argo, still not having all of the authority it sought, then filed this action. However, prior to the hearing in this court, the I.C.C., on its own motion, again reopened the Sub-No. 18 proceeding and in its report in 1965 (99 M.C.C. 591) concluded that, properly construed, the certificate allowed transportation of commodities listed under parts A and B of the appendix for any shipper, irrespective of the identity of the manufacturer or distributor, but apparently ruled that commodities listed under part C could be transported only if manufactured or distributed in the first instance by a meat packinghouse.

At this point, the Court feels constrained to point out that in the three reports of the I.C.C. dealing with Argo's application, the I.C.C. appears to equate the phrase "transportation of commodities produced or distributed in the first instance by meat packinghouses" with the phrase "transportation of * * * commodities * * * for packinghouse shippers." If Argo can transport "commodities produced or distributed in the first instance by meat packinghouses" which are listed under part C of the *Modification* appendix, then it can transport shipments for shippers who are not

meat packinghouses so long as the shipments themselves were produced or distributed in the first instance by a packinghouse. On the other hand, if Argo can transport "commodities * * * for packinghouse shippers," then it cannot transport shipments for shippers who are not meat packinghouses even though the shipments themselves were produced or distributed in the first instance by a meat packinghouse. This equation of phrases gives rise to confusion.

Argo then, following this 1965 report, filed an amendment to its complaint, setting out this last action by the I.C.C., and the hearing before this three-judge court was held. Argo raises no question here as to the correctness of the ruling by the I.C.C. in the Sub-No. 18 proceeding that public convenience and necessity do not require any further extension of Argo's authority.

■ The interpretation placed upon Argo's certificate by the I.C.C. must be affirmed by this Court unless it is clearly erroneous. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), rehearing denied 356 U.S. 934, 78 S.Ct. 770, 2 L.Ed.2d 763 (1958); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1945); U.S.A.C. Transport, Inc. v. United States, 235 F. Supp. 689 (D.C.Del.1964), aff'd per curiam, 380 U.S. 450, 85 S.Ct. 1103, 14 L.Ed. 2d 151 (1965).

In Modification of Permits—Packing House Products, 46 M.C.C. 23, referred to in Argo's certificate, together with the modification of that report (48 M.C.C. 628), the I.C.C. construed permits of contract carriers to transport "packinghouse products" as permitting them to transport all products shown to be manufactured or distributed by meat packinghouses and the appendix was attached to delineate precisely what these products were. These proceedings were instituted by the American Meat Institute, an association of meat packinghouses, and it is clear from the reports that it was not the intention of the I.C.C., in placing this construction on these permits, to allow such carriers to transport commodities listed in the appendix for any shipper without regard to the identity of the manufacturer or distributor.

Defendants rely on Chrispens Truck Lines, Inc.—Investigation of Operations, 63 M.C.C. 625, in which the I.C.C. ruled that a contract carrier with a permit allowing transportation of "packinghouse products" could not transport products listed in the appendix to the *Modification* report for any shipper, though it did rule that such carriers could transport such products for any shipper if the shipment was in fact manufactured or distributed in the first instance by a meat packinghouse. Defendants also rely on Morehouse—Investigation of Operations, 81 M.C.C. 614, aff'd Morehouse v. United States, 194 F.Supp. 940 (D.C.Neb.1961), aff'd, per curiam, 368 U.S. 348, 82 S.Ct. 385, 7 L.Ed.2d 342 (1961), involving construction of a certificate of a common carrier allowing transportation of "packinghouse products," and the ruling by the I.C.C. was the same as in *Chrispens*. To the same effect is: Safeway Truck Lines, Inc.—Investigation and Revocation of Certificate, 74 M.C.C. 679.

Argo argues, however, that *Chrispens, Morehouse* and *Safeway*, supra, are not applicable here because the authority involved in those cases was to transport "packinghouse products," while here the authority is to transport "the *commodities* classified as (a) * * * and (b) * * * and (c) * * * in the appendix to the report * * *." The word *"commodities"* is underlined in the certificate, Argo points out, and argues that it is clear from the very terms of the certificate that Argo is authorized to transport for any shipper, without regard to the *identity of the manufacturer* or distributor, all of the *commodities* listed in the appendix. More analogous to its certificate, argues Argo, are those involved in Sanders—Extension of Operations, 47 M.C.C. 210 (in which a certificate allowing transportation of "mer-

chandise as is dealt in by wholesale and retail grocery stores" was construed by the I.C.C. to allow the holder to transport any merchandise dealt in by such businesses for any shipper and to any consignee) and Vidas—Contract Carrier Application, 62 M.C.C. 106 (in which a certificate allowing transportation of "such commodities as are sold by retail mail-order houses" was construed by the I.C.C. to allow the holder to transport any commodities as are sold by such businesses for any shipper).

The answer to this argument of Argo is that the I.C.C., in its last report in the instant case (99 M.C.C. 591), has agreed with Argo with respect to the commodities listed in parts A and B of the appendix, that is, it there ruled that Argo may transport these commodities for any shipper without regard to the business of the manufacturer or distributor; but, for reasons sufficient to make the interpretation a permissible one, the I.C.C. ruled that Argo can transport the commodities that are still in issue, all being commodities listed under part C, for any shipper, if such shipments have in fact been either manufactured or initially distributed by meat packinghouses. The reasons upon which the I.C.C. relied in reaching this interpretation of the Argo certificate with respect to part C products were: (1) the phrases by which parts A and B of the appendix are prefaced, in contrast to that employed in the heading to part C, do not refer to packinghouses; (2) unlike part C, the commodity lists contained in parts A and B do not remotely approach being general commodities; and (3) there is nothing in decisional history which precludes this interpretation of the certificate with respect to parts A and B, but there is decisional history which precludes such an interpretation of this certificate with respect to part C. Prior rulings of the I.C.C. which might be deemed to be inconsistent with this ruling were expressly overruled.

■ In summary, there is no longer any issue between Argo and the I.C.C.

with respect to the authority to transport commodities listed under parts A and B of the appendix for any shipper, without regard to the business of the manufacturer or distributor, since the I.C.C. has finally, in 1965, so construed Argo's certificate. Nor is there any issue with respect to the authority to transport shortening, which is listed under part C, for any shipper without regard to the business of the manufacturer or distributor, since Argo's certificate has been specifically modified to allow this. As heretofore indicated, we think it is possible that the I.C.C. intended, in 1965, to rule that carriers, such as Argo, which have certificates authorizing the transportation of property by specific reference to part C of the appendix to the *Modification* report, may transport part C commodities only for meat packinghouses. However, the I.C.C. actually stated in this 1965 report that they may "transport only such [commodities] * * * as are produced or distributed in the first instance by meat packinghouses." As also heretofore indicated, this latter authorization is not quite as restricted as the former one, because it would allow the carrier to transport part C commodities for any shipper so long as the shipment transported was in fact produced or distributed in the first instance by a meat packer. The Court determines the ruling of the I.C.C. to be the less restricted one, that is, with respect to part C commodities, Argo's authority is limited to the transportation of such part C commodity shipments for *any* shipper, but if and only if the shipments being transported have been in fact produced or initially distributed by a meat packinghouse. Further, and in any event, we have determined that neither interpretation of Argo's certificate with respect to part C commodities is clearly erroneous. We therefore conclude that the application of Argo for an injunction prohibiting the enforcement of and to set aside the order of the I.C.C. should be denied.

Counsel for the original defendants will prepare an order for entry.

APPENDIX

*A. Meats, meat products and meat byproducts*

Amniotic or foetal fluid
Bladders
Blood, blood albumen, blood flour, blood meal
Bones
Bouillon cubes
Canned or packaged meats
Canned or packaged meat products
Cracklings
Chili con carne
Game
Greases
Hog skins
Hoofs
Horns
Lard
Lard compounds
Meats, fresh, salted, cooked, cured, or preserved
Meat scraps
Oils
Oleo stock
Pizzles
Poultry
Rabbits
Rennets
Sausage
Sausage casings
Skins or rinds, bacon or ham
Soap stock
Stearine
Stomach linings
Tallow, animal
Tankage
Venison
Weasands

*B. Dairy products*

Butter
Butter fat
Buttermilk
Cheese
Cream
Eggs
Milk
Oleomargarine
Poultry, dead, dressed
Rabbits, dead

*C. Articles distributed by meat-packing houses*

Abrasives
Advertising matter, forms, racks, or signs
Bristles
Canned Goods
Chemical compounds
Chemicals
Coconut oil
Coloring
Drugs manufactured by meatpacking houses
Emulsifiers
Fatty acids
Feathers or quills
Feed, animal, bird, or poultry
Fertilizer, or fertilizer materials
Gelatine
Glue or glue stock
Glycerine
Hair and padding
Hides and pelts
Lard substitutes
Liver extract
Peanut butter
Pickles, preserves, relishes, condiments, and spreads
Premiums when packed with the meat, meat products or meat byproducts with which to be given
Rennet extract
Soap and soap products
Tails or switches
Toilet preparations manufactured by meat-packing houses
Vegetable oil shortening
Wool