Charles H. BEANEY d/b/a Beaney Transport, Plaintiff,

v.

The UNITED STATES of America and Interstate Commerce Commission, Defendants.

Civ. A. No. 1967-8.

United States District Court
W. D. New York.

July 27, 1967.

Ronald N. Cobert, Washington, D. C., Thomas R. McHugh, Rochester, N. Y. (Grove, Jaskiewicz & Gilliam, Washington, D. C.; Hickey & McHugh, Rochester, N. Y., on the brief), for plaintiff.

Jerome Nelson, Atty., Washington, D. C. (Robert W. Ginnane, Gen. Counsel, on the brief), for Interstate Commerce Commission.

Stephen S. Joy, Asst. U. S. Atty. (John T. Curtin, U. S. Atty., Buffalo, N.Y.; John H. D. Wigger, Atty., Dept. of Justice, Edwin M. Zimmerman, Acting Asst. Atty. Gen., Washington, D. C., on the brief), for United States.

William J. Hirsch, Buffalo, N. Y., for intervenors.

Before FEINBERG, Circuit Judge, BURKE, Chief Judge, and HENDERSON, District Judge.

FEINBERG, Circuit Judge:

Plaintiff Charles H. Beaney, d/b/a Beaney Transport, seeks to enjoin two orders of the Interstate Commerce Commission, and pursuant to the cumbersome procedure [1] for reviewing Commission orders, a statutory three-judge court has been invoked.[2] Plaintiff's arguments in support of his request for interlocutory and permanent injunctions are completely without merit. Accordingly, we affirm the Commission orders under attack and deny the injunctions sought.

Plaintiff Beaney, a motor common carrier with his principal place of business in upstate New York, operates a fleet of trucks between Canada and various northeastern states. Defendants are the Commission and the United States; intervening defendants are various competing motor carriers who claim to have suffered from Beaney's allegedly illegal operations. This controversy involves interpretation of one of Beaney's certificates of public convenience and necessity issued to him in 1950.[3] That certificate permits Beaney to carry, *inter alia*, "the commodities described in paragraphs A, B, and C, in the appendix to the report

---

1. See Freight Forwarders Institute v. United States, 263 F.Supp. 460, 462 n. 3 (S.D.N.Y.1967); ALI, Study of the Division of Jurisdiction Between State and Federal Courts 214–15 (Tent. Draft No. 5, 1967).

2. 28 U.S.C. §§ 2321, 2325.

3. No. MC–11753 (Sub-No. 25), issued October 9, 1950.

in *Modification of Permits-Packing House Products*, 48 N.C.C. 628 [(1948)]

\* \* \*." [4]  The appendix referred to is reproduced in full in the margin.[5]  The

4.  The cited proceeding was a major interpretation, sought by an association of meat-packing houses, of permits of motor contract carriers serving meat-packing companies.

5.

## APPENDIX

### A. Meats, meat products and meat byproducts

Amniotic or foetal fluid
Bladders
Blood, blood albumen, blood flour, blood meal
Bones
Bouillon cubes
Canned or packaged meats
Canned or packaged meat products
Cracklings
Chili con carne
Game
Greases
Hog skins
Hoofs
Horns
Lard
Lard compounds
Meats, fresh, salted, cooked, cured, or preserved
Meat scraps
Oils
Oleo stock
Pizzles
Poultry
Rabbits
Rennets
Sausage
Sausage casings
Skins or rinds, bacon or ham
Soap stock
Stearine
Stomach linings
Tallow, animal
Tankage
Venison
Weasands

### B. Dairy products

Butter
Butter fat
Buttermilk
Cheese
Cream
Eggs
Milk
Oleomargarine
Poultry, dead, dressed
Rabbits, dead

### C. Articles distributed by meat-packing houses

Abrasives
Advertising matter, forms, racks, or signs
Bristles
Canned goods
Chemical compounds
Chemicals
Coconut oil
Coloring
Drugs manufactured by meat-packing houses
Emulsifiers
Fatty acids
Feathers or quills
Feed, animal, bird, or poultry
Fertilizer, or fertilizer materials
Gelatine
Glue or glue stock
Glycerine
Hair and padding
Hides and pelts
Lard substitutes
Liver extract
Peanut butter
Pickles, preserves, relishes, condiments, and spreads
Premiums when packed with the meat, meat products or meat byproducts with which to be given
Rennet extract
Soap and soap products
Tails or switches
Toilet preparations manufactured by meat-packing houses
Vegetable oil shortening
Wool

48 M.C.C. at 636.

specific question before us concerns paragraph C of that appendix which lists various commodities after a heading entitled "Articles distributed by meat-packing houses." In 1964, Beaney petitioned the Commission for an interpretation of this language, claiming that he could transport all the commodities specified in the appendix "without regard to shipper, consignee, use, destination or transportation service provided." [6] The Commission held that Beaney could transport products listed in paragraphs A and B "irrespective of whether they are produced or initially distributed by meat packinghouses" and regardless of the identity of either consignor or consignee.[7] However, with regard to paragraph C, carriage of these commodities was held permissible only when "produced or distributed in the first instance by meat packinghouses." Beaney's petitions for reconsideration, oral argument and reopening for oral testimony were denied.

Beaney then sought judicial review in the United States District Court for the Western District of New York, and this three-judge court was convened. Prior thereto, Beaney obtained from Judge Burke a temporary restraining order pending a hearing; this was based upon Beaney's ex parte representations that enforcement of the Commission order with regard to paragraph C would cause a loss of established customers, reduction of his work force, risk of civil and criminal sanctions and possible bankruptcy. A few months earlier, Beaney had applied to the Commission for the first time for permanent authority to continue to operate as he has in the past.[8] Before this court, Beaney moves for an interlocutory injunction until his new application is decided by the Commission and for a permanent injunction against enforcement of the order on the merits. The hearing before us encompassed both motions.

The Commission is vested with broad discretion to construe certificates of its own creation; the cases teach that such interpretations are binding on the courts unless arbitrary or clearly erroneous.[9] Beaney states two principal objections to the order: first, that the Commission failed to explain adequately the grounds for its decision; second, that there is no reasonable basis for a distinction between paragraphs A and B on the one hand and paragraph C on the other. These claims are without merit. Indeed, Beaney's argument for a permanent injunction is so insubstantial that his request for interlocutory relief fails a fortiori. Moreover, over six months have already passed under the temporary restraining order Beaney obtained in January 1967,[10] and many more will pass before the Commission rules on Beaney's application for permanent authority. The Commission itself denied

---

6. Prior to 1964, Beaney had apparently conducted his operations under this theory; this had been questioned at least as early as 1958 by the local Commission District Supervisor and various competitors, some of whom are intervenors in the proceeding below and here.

7. No. MC-11753 (Sub-No. 25), issued November 16, 1965, aff'd June 29, 1966 (Division 1 acting as an Appellate Division). On September 15, 1966, the full Commission held that the case presented no issue of general transportation importance, and therefore denied review. 49 U.S.C. § 17(6); 49 C.F.R. § 1.101(a) (4) (1967).

8. We are informed that hearings on that application, No. MC-11753 (Sub-No. 29), began on June 5, 1967.

9. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 558 n. 4, 78 S.Ct. 496, 2 L. Ed.2d 484 (1958); U.S.A.C. Transport, Inc. v. United States, 235 F.Supp. 689, 692 (D.Del.1964), aff'd per curiam, 380 U.S. 450, 85 S.Ct. 1103, 14 L.Ed.2d 151 (1965); Roadway Express, Inc. v. United States, 213 F.Supp. 868, 873–874 (D. Del.), aff'd per curiam, 375 U.S. 12, 84 S.Ct. 53, 11 L.Ed.2d 38 (1963); Malone Freight Lines, Inc. v. United States, 107 F.Supp. 946, 949 (N.D.Ala.1952), aff'd per curiam, 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712 (1953).

10. The Commission has apparently not objected to the continuance of the order.

Beaney substantially the same interim relief he now seeks from us by refusing to consolidate the present action with his application for permanent authority.[11] We will not delay longer the enforcement of Commission orders so clearly correct.

In order to provide meaningful review, agency determination must be based on clearly stated grounds. SEC v. Chenery Corp., 318 U.S. 80, 94–95, 63 S.Ct. 454, 87 L.Ed. 626 (1943); Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197, 61 S.Ct. 845, 88 L.Ed. 1271 (1941). But that does not mean that every argument put before the Commission, however peripheral, must be disposed of separately [12] or at length. Here, the Commission supported its clearly stated interpretation of the 1950 certificate by the following reference: "See: Argo-Collier Truck Lines Corporation Extension—Cleaning Compounds, 99 M.C.C. 591 [(1965)] * * *." In that thorough and reasoned Commission decision, which has since been affirmed by a three-judge court,[13] the certificate covered

> The commodities classified as (a) meats, meat products, and meat by-products, and (b) dairy products, and (c) articles distributed by meat-packing houses, in the appendix to the report in Modification of Permits-Packing House Products, 46 M.C.C. 23 * * *.[14]

Argo had transported some paragraph C goods without limitation from the time its certificate was granted in 1952, and such carriage constituted a substantial part of its business. The Commission ruled, as it did here, that A and B goods could be shipped without limitation, but that paragraph C commodities must be manufactured or initially distributed by a meat-packing house. It gave three reasons for so holding: (1) the titles to A and B, contrary to C, do not refer to meat-packing house distribution; (2) unlike the products in C, those in A and B "do not even remotely approach the term 'general commodities' "; and (3) prior decisions have limited C, but have not limited A and B. These clearly stated decisional grounds are incorporated by reference in the order presently under consideration, and permit this court to undertake a full review.

Beaney argues that the use of a "See" citation in the order constitutes an admission by the Commission that *Argo* is not directly in point, and demonstrates the need for more complete analysis. He bases this contention on A Uniform System of Citations 87 (11th ed.1967) ("The Blue Book"). Such substantive reliance on citation forms suggests too much for the "glorious inscrutibility" of introductory signals. See Lushing, Book Review, 67 Colum.L.Rev. 599, 601 (1967). In any case, a Blue Book "See" citation would provide an adequate basis for a Commission order, because it refers to "basic source material supporting an opinion or conclusion of either law or fact * * *." The Blue Book, 87. Where, as here, the Commission is interpreting a certificate of its own creation, and has recently considered the same problem with respect to a very similar certificate, a citation to the judgment in the other proceeding is a sufficient statement of the grounds of decision to allow review. Of course, such a prior decision does not authorize the Commission or the court to ignore the facts of the particular case before it. See Pre-Fab Transit Co. v. United States, 262 F.Supp. 1009, 1013 (S.D.

---

11. MC-11753 (Sub-No. 25 and Sub-No. 29), issued December 20, 1966.

12. Before the Commission and before us Beaney argued that both his broad Canadian authority and a prior limited Commission certificate implied a liberal construction of his 1950 authorization. These contentions were of no moment, however, once the Commission held that the plain title of paragraph C was not to be ignored.

13. Argo Collier Truck Lines Corp. v. United States, 268 F.Supp. 942, (W.D. Tenn.1967).

14. This is the same schedule reprinted at 48 M.C.C. 628, 636, and referred to in Beaney's 1950 certificate. See note 5 supra.

Ill.1967). It merely permits the Commission to maintain a consistent interpretation of contested language absent a showing that the construction is inapplicable or unreasonable. See Simpson v. United States, 200 F.Supp. 372, 377–378 (S.D. Iowa 1961), aff'd per curiam, 369 U.S. 526, 82 S.Ct. 954, 8 L.Ed.2d 83 (1962). It is to this second contention of Beaney that we now turn.

In his 1950 certificate, Beaney was authorized to carry the "commodities described in paragraphs A, B, and C * * *." The title to paragraph C describes the commodities listed there as "Articles distributed by meat-packing houses." The essence of Beaney's argument is that because his certificate refers to "commodities," the list in paragraph C *must* be taken without the title. The statement of this contention refutes it. The Supreme Court has stated that "the plain meaning of words in a commodity description is controlling in the absence of ambiguity or specialized usage in the trade." Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 557, 78 S.Ct. 496, 498, 2 L.Ed.2d 484 (1958.) In this context, with no ambiguity or special trade usage, the Commission interpretation is at least reasonable, if not, indeed, compelling. Moreover, the general commercial nature of the goods listed in C shows the logical reason for restricting transportation authority. Unless original production or distribution by meat-packing houses is required as to such general commodities, Beaney could engage in "widespread incursions * * * into the province of the general commodities carriers—a result which would go far beyond the obvious intent of the grant of authority to applicant as well as the purpose for which part C was formulated." Argo-Collier Truck Lines Corp. Extension—Cleaning Compounds, 99 M.C.C. at 600. Therefore, the Commission's construction of Beaney's 1950 certificate was not clearly erroneous or arbitrary.

Accordingly, we conclude that the request for interlocutory and permanent injunctions against enforcement of the Commission orders should be denied. Beaney has moved to strike certain material in the intervenors' brief. Although we have not relied thereon in reaching our conclusions, we see no adequate reason to grant the motion; accordingly, it is denied. This opinion incorporates findings of fact and conclusions of law.

Settle an appropriate order on notice.