ANDREW G. NELSON, INC., *v.* UNITED
STATES ET AL.

No. 16.   Argued December 11, 1957.—Decided March 3, 1958.

*Paul E. Blanchard* argued the cause for appellant. With him on the brief were *Victor L. Lewis* and *Edward W. Rothe.*

*Roger Fisher* argued the cause for appellees. On the brief were *Solicitor General Rankin, Assistant Attorney General Hansen, Robert W. Ginnane* and *Isaac K. Hay* for the United States and the Interstate Commerce Commission, appellees.

MR. JUSTICE CLARK delivered the opinion of the Court.

This appeal concerns the scope of a contract carrier permit granted appellant by the Interstate Commerce Commission under the "grandfather clause" of the Motor Carrier Act of 1935.[1] The Commission interpreted "stock in trade of drug stores," a commodity description in appellant's permit, to authorize carriage of only those goods which at time of movement are, or are intended to become, part of the stock in trade of a drugstore. On the basis of that interpretation, an appropriate cease and desist order prohibiting carriage of unauthorized goods was entered. 63 M. C. C. 407. After a three-judge District Court refused to enjoin enforcement of the order, 150 F. Supp. 181, direct appeal was taken to this Court, and we noted probable jurisdiction. 352 U. S. 905 (1956). For reasons hereinafter stated we affirm the judgment of the District Court.

---

[1] This Act became Part II of the Interstate Commerce Act. Section 209 (a), 49 Stat. 552, as amended, 52 Stat. 1238, 64 Stat. 575, 49 U. S. C. § 309 (a) (1), makes it unlawful to engage in interstate contract carriage by motor vehicle without a permit from the Interstate Commerce Commission; however, the first proviso thereto provides that the Commission shall issue a permit as a matter of course upon application by a carrier for authority to operate a route over which the carrier or a predecessor in interest was in bona fide operation on July 1, 1935. That proviso is commonly called the "grandfather clause."

Appellant's predecessor, Andrew G. Nelson, having operated as a contract carrier before enactment of the Motor Carrier Act, applied for a permit to continue his operation subsequent to passage of the Act, as contemplated by § 209 (a) thereof. The application described Nelson's complete operation as "transportation . . . of store fixtures and miscellaneous merchandise, and household goods of employes, for Walgreen Co., in connection with the opening, closing and remodeling of stores." In a supporting affidavit Nelson stated that he was "an interstate contract carrier of property for the Walgreen Company and for it alone . . . to and from Walgreen Retail Stores . . . the commodities so transported [being] usually store fixtures and equipment and merchandise for the opening stock." Filed with the affidavit were 17 delivery receipts showing contract carriage for Walgreen in 1934–1935.

On March 13, 1942, the Commission issued the permit in controversy without a hearing, relying on the application and supporting papers filed by Nelson. The permit authorized contract carriage of "[n]ew and used store fixtures, new and used household goods, and stock in trade of drug stores" [2] over irregular routes in 10 States. Upon Nelson's incorporation in 1951, the Commission issued an identical permit to the corporation, the appellant here. In 1954, an investigation by the Commission to determine if appellant was operating beyond the bounds of its permit authority revealed that appellant was carrying a wide range of commodities for many kinds of shippers, including groceries for grocery stores, beer and wine to liquor distributors, dry glue to manufacturers of gummed products, and automobile batteries to department stores. The Commission held that such carriage, all of which

---

[2] Since neither party attaches any significance to certain underscoring of language in the permit, we do not italicize that language.

appellant attempted to justify under the description "stock in trade of drug stores," violated § 209 of the Act, which prohibits contract carriage without a permit authorizing the business in question.

Appellant contends that the critical language of the permit, "stock in trade of drug stores," is a generic description of commodities by reference to place of sale, entitling it to transport goods like those stocked by present-day drugstores to any consignee within the authorized operating territory. The Commission, however, regards these words as a description of commodities by reference to intended use, authorizing a more limited carriage: goods moving to a drugstore for sale therein, or if moving elsewhere, then with the intention at the time of movement that they ultimately will become part of the goods stocked by a drugstore. Appellant argues that the intended use of the goods is of no consequence here because (1) intended use restrictions are never applied to commodity descriptions by reference to place of sale, and (2) intended use restrictions were developed by the Commission long after issuance of Nelson's permit and cannot now be applied retroactively. Finally, having offered evidence of a much more extensive grandfather operation than was set out in Nelson's application and affidavits, appellant contends that the Commission erred in excluding such evidence.

Before considering these contentions, we first note that the plain meaning of words in a commodity description is controlling in the absence of ambiguity or specialized usage in the trade. Neither of the parties believes the description here patently ambiguous,[3] nor do we consider

---

[3] Appellant does argue alternatively that if the Commission's interpretation is adopted, the description necessarily would be ambiguous. This is a considerable twisting of appellant's earlier position, consistently maintained throughout these proceedings, that

it to be such. Moreover, appellant is unwilling to say that the instant description is a term of art, while the Commission specifically asserts that it is not. Consequently, the ordinary meaning of the words used in the permit is determinative. In ascertaining that meaning, we are not given *carte blanche;* just as "[t]he precise delineation of an enterprise which seeks the protection of the 'grandfather' clause has been reserved for the Commission," *Noble* v. *United States,* 319 U. S. 88, 93 (1943), subsequent construction of the grandfather permit by the Commission is controlling on the courts unless clearly erroneous. *Dart Transit Co.* v. *Interstate Commerce Comm'n,* 110 F. Supp. 876, aff'd, 345 U. S, 980 (1953).[4]

---

the permit's phraseology exhibits no ambiguity or indefiniteness. In this regard, the Commission held, "We agree with the contention of the parties and the examiner's conclusion that there is no such patent ambiguity in the permit as to warrant our going back of it and giving consideration to events prior to its issuance." 63 M. C. C., at 409.

Absent patent ambiguity, it is well established that the Commission will not' refer to the underlying grandfather operation. *P. Saldutti & Son, Inc.—Interpretation of Permit,* 63 M. C. C. 593. Even if such reference is made here, however, the Nelson application and all the documents filed with it describe an operation solely for the Walgreen Drug Company; appellant admits that all the record evidence before the Commission gives "the impression that Nelson was hauling only for Walgreen." That background in nowise supports appellant's position here, since it shows Nelson to have been carrying goods actually destined to become part of the stock of a drugstore, and not merely goods like those stocked by such a store. Although appellant offers evidence now of a grandfather operation more extensive than carriage merely for Walgreen, it seems obvious that the Commission's intent in issuing the present permit is not to be ascertained from evidence unknown to the Commission at the time of issuance.

[4] It is true, of course, that limitations on Commission power to modify motor carrier permits, established in § 212 (a) of the Act, cannot be by-passed under a guise of interpretative action. Com-

In construing "stock in trade of drug stores," the Commission found the controverted words to be a commodity description by reference to intended use; it held them equivalent to "drug stores' stock" and analogized the latter to such descriptions as "contractors' equipment" [5] or "packing house supplies." [6] On that basis it required that the goods transported be intended for use by a drugstore as part of its stock in trade.

The Commission rejected appellant's contention that the words of this permit are a description by reference to place of sale.[7] In making that contention appellant equates the permit's language with "goods such as are sold in drug stores." It is obvious to us that such a reading enlarges the ordinary meaning of the words. As pointed out by the examiner, 63 M. C. C., at 414, the description used in the permit connotes possession, and therefore lends itself more readily to "drug stores' stock" than it does to "goods such as are sold in drug stores." [8]

mission interpretation of the meaning of a permit, being simply a definitive declaration of what rights existed from the very beginning under the permit, cannot be equated with modification, however, unless found to be clearly erroneous.

[5] See *C. & H. Transportation Co.—Interpretation of Certificate*, 62 M. C. C. 586, holding that "contractors' equipment and supplies" authorized transportation of such goods only when intended for use by a contractor; transportation of similar goods for use by a branch of the armed services was held unauthorized.

[6] See *Dart Transit Co.—Modification of Permit*, 49 M. C. C. 607, holding that "packing house supplies" means supplies that in fact are intended to be used in a packing house, and not supplies like those used in packing houses.

[7] In contending, then, that the Commission erred in applying the intended use test to a commodity description by reference to place of sale, appellant clearly begs the question at issue.

[8] Appellant argues that *McAteer Contract Carrier Application*, 42 M. C. C. 35, equates the phrases "goods such as are sold in" and "stock in trade of." The opinion's single use of the latter phrase, however, gives no support to such a contention.

Moreover, an examination of the Commission's decisions indicates use of a definite and distinctive linguistic pattern whenever descriptions are made by reference to place of sale: if the Commission's purpose has been to authorize transportation of goods like those named in the permit, that purpose consistently has been revealed by use of the phrase "such as," or a close variation thereof.[9]   Yet there is no such phrase in the present permit.   These considerations are bulwarked by the record Nelson put before the Commission in 1942, clearly showing that he was hauling Walgreen's drugstore stock, and not goods such as might be stocked for sale by Walgreen.   On balance, therefore, we are compelled to think the Commission right; certainly it is not clearly wrong.

Appellant contends that the permit language cannot embody an intended use restriction because such restrictions were not formulated by the Commission until after issuance of Nelson's permit and cannot be retroactively applied as a limitation on the same.   The Commission challenges the assertion that the intended use restriction was never applied prior to issuance of the permit.   It is

---

[9] See, e. g., *Interstate Commerce Comm'n* v. *Ratner*, 6 CCH Fed. Carriers Cases ¶ 80,415 ("such merchandise as is dealt in by wholesale food business houses"); *Anton Vidas Contract Carrier Application*, 62 M. C. C. 106 ("such commodities as are sold by retail mail-order houses"); *National Trucking Co. Extension—Electrical Appliances*, 51 M. C. C. 638 ("such commodities as are dealt in by wholesale and retail hardware stores"); *Sanders Extension of Operations*, 47 M. C. C. 210 ("such general merchandise as is dealt in by wholesale and retail grocery stores"); *McAteer Contract Carrier Application*, 42 M. C. C. 35 ("such merchandise as is dealt in by wholesale, retail, and chain grocery and food business houses"); *Onondaga Freight Corp. Common Carrier Application*, 28 M. C. C. 53 ("such merchandise as is dealt in by retail food stores"); *Keystone Transportation Co. Contract Carrier Application*, 19 M. C. C. 475 ("such merchandise as is dealt in by wholesale, retail, and chain grocery and food business houses").

unnecessary for us to resolve that question, however. Assuming that the intended use test first appeared as a commodity description technique after appellant's predecessor obtained his permit, we think the Commission still free to interpret the permit as it has done. Its determination accords with the common, ordinary meaning of the words used, and in no way strains or artificializes that meaning.[10] If the controverted words fairly lend themselves now to the construction made here, they always have done so. Consequently, any retroactive application of the intended use test could work no prejudice to appellant; once it is determined that the ordinary meaning of the description is neither more nor less than the Commission's interpretation, the manner in which the Commission arrived at its conclusion is not controlling.[11]

Finally, appellant contends that the Commission's interpretation limits the actual—though previously unasserted—scope of grandfather operations carried on by appellant's predecessor, thus subverting the substantial parity which a grandfather permit should establish between pre-Act and post-Act operations. *Alton R. Co.* v. *United States,* 315 U. S. 15 (1942). If this be so, the remedy lies elsewhere: in the event the grandfather permit does not correctly reflect the scope of the grandfather operation, the carrier's recourse is to petition the Commission to reopen the grandfather proceedings for consideration of the evidence not previously brought to the

---

[10] Contrast the Commission's interpretation here with those in *Bird Trucking Co.—Modification of Certificate,* 61 M. C. C. 311, rev'd, 11 CCH Fed. Carriers Cases ¶ 81,028; *Johnson Truck Service* v. *Salvino,* 61 M. C. C. 329, rev'd, 119 F. Supp. 277, on which appellant relies.

[11] The intended use test, as applied by the Commission here, is descriptive rather than determinative: it describes the result obtained by taking the language of the permit at face value, and in no sense is a factor in arriving at that result.

Commission's attention. Such a contention is no answer to the present charge of permit violation, since the permit cannot be collaterally attacked. *Callanan Road Improvement Co.* v. *United States,* 345 U. S. 507 (1953); *Interstate Commerce Comm'n* v. *Consolidated Freightways, Inc.,* 41 F. Supp. 651. To hold otherwise would render meaningless the congressional requirement of a permit to continue grandfather operations subsequent to the Act.

Appellant's arguments based on noncompliance with the Administrative Procedure Act, 60 Stat. 237, 5 U. S. C. §§ 1001–1011, have no merit.

*Affirmed.*

MR. JUSTICE DOUGLAS dissents.