ARCHIE'S MOTOR FREIGHT, INCORPORATED, Complainant,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Defendants.

Civ. A. No. 3015.

United States District Court
E. D. Virginia,
at Richmond.

Argued March 18, 1960.

Decided June 3, 1960.

---

488

John C. Goddin, Richmond, Va., and Glenn F. Morgan, Washington, D. C., for plaintiff.

Robert W. Ginnane, Gen. Counsel, Arthur J. Cerra, Asst. Gen. Counsel, I. C. C., Washington, D. C., for Interstate Commerce Commission.

Robert A. Bicks, Acting Asst. Atty. Gen., James H. Durkin, Atty., Dept. of Justice, Washington, D. C., Joseph S. Bambacus, U. S. Atty., E. D. Virginia, Richmond, Va., for the United States.

Drew L. Carraway, Homer S. Carpenter, Washington, D. C., and Books Shetter, Richmond, Va., for Snyder Bros. Motor Freight, Inc., intervening defendant.

Before BOREMAN, Circuit Judge, and BUTLER and BRYAN, District Judges.

ALBERT V. BRYAN, District Judge.

Peanut butter is not canned goods, the Interstate Commerce Commission has here held in construing the plaintiff motor carrier's certificate of authority, wherein the service to be rendered is limited to the transportation, between named termini, of "canned goods". In the circumstances we quite agree. Hence we uphold the Commission's cease and desist order against the further carriage by the plaintiff of peanut butter.

The certificate of convenience and necessity of Archie's Motor Freight, Incorporated, was originally issued, February 12, 1936, under the grandfather clause of the Motor Carrier Act of 1935—Part II of the Interstate Commerce Act. Section 206; 49 U.S.C.A. § 306. On complaint to the Commission, Archie was found to have exceeded its privilege by hauling peanut butter packed in glass jars. This construction of its certificate, Archie now charges, is arbitrary, capricious and otherwise unreasonable.

The definition of "canned goods", now relied upon by the Commission, has been consistently followed by it over the years and was summarized in Bird Trucking Co.—Modification of Certificate, 61 M.C.C. 311, 314 (1952), prior report 53 M.C.C. 703, in this way:

"Foods which have been processed to produce a sterile, bacteria-free product which will not ferment or otherwise spoil if enclosed in a hermetically sealed container, usually a can but permissibly a glass container, or conceivably one of some other material".*

Archie contends that the Commission's interpretation of the phrase is hypertechnical, impracticable and insensible to actualities. It urges that the terminology of the certificate must be taken in the sense in which it is ordinarily understood. In housewife's parlance, as well as in commerce and industry, continues

* In Bird Trucking Co. v. United States, 159 F.Supp. 717 (W.D.Wis.1955) a three-judge court inferentially approved this definition by not raising the point in reviewing the Commission's action and confining the discussion to another aspect of the case.

Archie, peanut butter, whether in metal or glass containers, is looked upon as canned goods. Peanut butter, the plaintiff notes, frequently is included as canned goods in carrier tariffs. Without objection by Commission or competitor it has since 1954 transported, Archie also shows, more than 300 truckloads of peanut butter under its present certificate. In sum, the plaintiff asks the court to restrain the Commission from giving a meaning to "canned goods" narrower than their physical appearance.

■ Our powers, in controversies of this character, are sheerly straitened. We may inquire only to ascertain if there is a reasonable basis for the construction placed by the Commission on the certificate. Though we may disagree with the Commission's conclusion, yet if it is not contrary to explicit law, and is not grounded in caprice or arbitrariness, but is premised on substantial evidence, we cannot disturb it. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), rehearing denied 356 U.S. 934, 78 S.Ct. 770, 2 L.Ed.2d 763.

The purpose and necessity for the specification of a carrier's service in its certificate are too plain to need defense. At any rate, it is a legislative policy and a requirement well within the powers of Congress. We do not have the question of whether or not the plaintiff motor carrier should initially have been, or should now continue to be, restricted to the type of service specified in its certificate. That issue was not before the Commission, nor is it here. We cannot by translation enlarge the authorization. Cf. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, supra, at 561, 78 S.Ct. 496, at 500, 2 L.Ed.2d 484. We consider only whether the Commission has fairly and justly read it.

The definition of the Commission exacts these two requisites of the article as packaged: (1) that it be a sterile, bacteria-free food, and (2) that its container be hermetically sealed, of necessity, to maintain its first and intended state. These are the indispensables of "canned

goods". Without them the merchandise is not of that category. Neither the material of the holder, nor its form or fashion, is the controlling factor. That the receptacles here were glass jars and not tins is unimportant, as is also the fact that the evidence fails to disclose how, if at all, they were sealed. The test is not whether the product may be placed in cans or kindred receptacles and sealed. The standard is that it must *necessarily* be so contained in order to keep its original characteristics and properties.

When the specification in the certificate is read with a view to its purpose, the criterion of the Commission is not unreasonable. Many things may be delivered in glass or tin enclosures. To class them as canned goods, solely for that reason, would destroy the intended restriction of the specification. Further, the intendment the Commission has given to the term is an accurate signification of the wording. It does not depart from common usage or understanding, nor is it an obsolete refinement. "Canned goods", the Commission uniformly has said, denotes a preserved food which depends upon an air-excluding container for its continued preservation.

Preserved or preservation is, in the context here, the predominant implication of "canned". That was an original connotation of the word. In Volume II, Oxford English Dictionary, are these definitions: "Can: to put in a can or cans; to preserve by sealing up air-tight in a can; 'to tin'"; "Canned: put up or preserved in a can; tinned"; "Canning: the preserving of meat, fish, fruit, etc., by sealing up in cans or tins; tinning". In Volume XI we find: "Tinned: preserved in air-tight tins; canned".

■ The Commission has found that peanut butter need not for its preservation be enclosed in an air-impervious container. It has concluded, also, that even in today's market and commerce "canned" still has the denotation it has heretofore given the word. Nothing in the history of the operations of the plaintiff or its predecessors is offered to

show that a more expanded import was accorded the phrase before, or at the time, the certificate was issued. The broader use of the same terminology in the tariffs, if relevant, has been found by the Commission to be inconclusive here. These determinations are securely based. The first two lie in the evidence, the last in the divergence in purpose between the tariffs and certificate specifications.

The prayers of the plaintiff that the Commission's order be enjoined, vacated and set aside will be denied, the complaint dismissed, the action stricken from the docket and the defendants awarded their costs.