**HEAVY DUTY HAULERS, INC.,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants.

**Civ. A. No. AC–1618.**

United States District Court
D. South Carolina,
Columbia Division.

Oct. 25, 1968.

See also D.C., 293 F.Supp. 887.

Irvine F. Belser, Jr., Columbia, S. C., Leonard A. Jaskiewicz, J. William Cain, Jr., Washington, D. C., for plaintiff.

Edwin M. Zimmerman, Asst. Atty. Gen., George Edelstein, Dept. of Justice, Washington, D. C., Klyde Robinson, U. S. Atty., for Dist. of of S. C., Columbia, S. C., for United States.

Robert W. Ginnane, Gen. Counsel, I. C. C., Washington, D. C., and Betty Jo Christian, Atty., I. C. C., Washington, D. C., for Interstate Commerce Commission.

Before HAYNSWORTH, Chief Circuit Judge, and HEMPHILL and RUSSELL, District Judges.

HEMPHILL, District Judge.

Plaintiff [1] is a common motor vehicle carrier, holding an interstate certificate of public convenience and necessity, No. MC 109430, which authorizes it to transport:

A. *Road building machinery and equipment* which because of size or weight requires special equipment,

Between points in South Carolina,
Between points in South Carolina, on the one hand, and, on the other, points in North Carolina.

B. *Road building machinery and equipment,*

Between points in South Carolina, on the one hand, and, on the other, points in Florida and Georgia.

Defendants are the United States of America, overall governmental authority in such matters,[2] and the Interstate Commerce Commission, recognized as the usual authority in matters of public interstate transportation, but attacked in the authority defined and exercised as to the commodity scope of plaintiff's certificate.[3] Present plaintiff's predecessor, Southeastern, was certificated on June 30, 1944 and given transportation rights between points in South Carolina and points in Georgia and Florida. In 1947 amendments to the certificate added rights between points in South Carolina to and from points in North Carolina.

On May 17, 1963, the Interstate Commerce Commission instituted, on its own motion, an investigation to determine whether plaintiff had been transporting commodities or classes of commodities (exceeding the commodity scope) not authorized by the certificate of public convenience and necessity. After designation as Docket No. MC–C–1048 a hearing was held before one of the Commission's hearing examiners. On March 11, 1964, the examiner filed a recommended report in which he concluded that the commodity descriptions of plaintiff's certificate authorized the transportation only of such machinery and equipment which is identified with road construction and which, because of size or weight, requires the use of special equipment. On March 9, 1964, two days prior to the filing of the examiner's report in Docket No. MC–C–1048, plaintiff petitioned for clarification and modification of Certificate No. MC–109430,[4] reopening and consolidation with MC–C–1048, and, reopening No. MC–C–4108 for further hearing. The petition was denied by Division I of the Commission on May 28, 1964, and thereafter plaintiff filed exception to the examiner's recommended report. On December 14, 1964, Division I of the Commission issued its decision and order affirming and adopting the findings of March 9, 1964. On January 11, 1965, plaintiff filed suit in this forum and the District Judge issued a temporary re-

1. The original holder of the transportation rights was Southeastern Haulers, Inc., present plaintiff's predecessor in title. It will be referred to herein as Southeastern.

2. The issue was not raised, and this court does not pass on the propriety of adding the United States as a party.

3. The territorial scope of plaintiff's authority is not in dispute in this action. As the examiner noted:
 The issue presented for determination is whether, in its operations under the certificate described above, respondent is and has been transporting commodities or classes of commodities

not authorized by such certificate. It is the position of the Bureau that respondent is authorized to transport only such road-building machinery and equipment which, by reason of size or weight, requires special equipment. Respondent, on the other hand, insists that the above-described commodity authorization permits the transportation (1) of road-building machinery, and (2) of any type of equipment which, by reason of size or weight, requires the use of special equipment.

4. The original certificate of convenience and necessity issued to Southeastern in 1944, amended in 1947.

straining order enjoining enforcement of the Division's (I) decision pending judicial review.

After institution of this court proceeding, Division I, acting as an Appellate Division, on its own motion reopened the instant proceeding for reconsideration on the existing record. In its report on reconsideration, issued September 28, 1965, the Division generally upheld the examiner's interpretation of plaintiff's certificate, and his conclusion that this correctly reflected the intention of the Commission at the time the certificates were originally issued. This report set forth in detail the criteria by which plaintiff is expected to determine what shipments are within the scope of its certificate. The Commission thereupon issued a cease and desist order requiring plaintiff to abstain from unauthorized operations in the future.

Plaintiff's supplemental complaint was filed in this court on November 24, 1965, and by stipulation the parties agreed that the previously entered temporary restraining order was to continue in effect pending final determination of this litigation. Basically plaintiff claims (1) the original certificate was not so limited in scope as found by the examiner, and affirmed by the Commission, and (2) that by a course of conduct on the part of plaintiff (and its predecessor) and the Commission, all parties heretofore had recognized the broad authority plaintiff enjoyed. Defendants denied the allegations of the complaint and reaffirmed the correctness of its examiner's interpretation of the commodity scope of plaintiff's certificated authority.

Section 206(a) (1) of the Interstate Commerce Act, 49 U.S.C. § 306(a) (1), prohibits motor common carrier operations in interstate commerce without a certificate of public convenience and necessity issued by the Commission:

> Except as otherwise provided in this section and in section 210a, no common carrier by motor vehicle subject to the provisions of this part shall engage in any interstate or foreign operation on any public highway, or with-

in any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations.

Under section 208(a) of the Act, 49 U.S.C. § 308(a), the Commission is empowered to specify the terms and conditions of a motor common carrier's certificate, and the service to be rendered thereunder:

> Any certificate issued under section 206 or 207 shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate; and there shall, at the time of issuance and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, including terms, conditions, and limitations as to the extension of the route or routes of the carrier, and such terms and conditions as are necessary to carry out, with respect to the operations of the carrier, the requirements established by the Commission under section 204(a) (1) and (6).

The power of the Commission to institute an investigation proceeding against a motor carrier is provided by section 204(c) of the Act, 49 U.S.C. § 304(c):

> Upon complaint in writing to the Commission by any person, State board, organization, or body politic, or upon its own initiative without complaint, the Commission may investigate whether any motor carrier or broker has failed to comply with any provision of this part, or with any requirement established pursuant thereto. If the Commission, after notice and hearing, finds upon any such investigation that

the motor carrier or broker has failed to comply with any such provision or requirement, the Commission shall issue an appropriate order to compel the carrier or broker to comply therewith. Whenever the Commission is of opinion that any complaint does not state reasonable grounds for investigation and action on its part, it may dismiss such complaint.

▇ Plaintiff first attacks the Commission's decision as an unreasonable interpretation, on its face, of the certificate rights granted to plaintiff. With this conclusion this court does not agree.

We are asked to interpret the words "which because of size and weight requires the use of special equipment" and/or the words "requiring special equipment," as generic, granting to plaintiff general authority in addition to the special authority to transport road-building machinery and equipment. There is nothing in the record before us that marks as clearly erroneous or unreasonable the Commission's finding that this was language limiting the transportation to road-building machinery and equipment *requiring special* equipment. We, therefore, reject plaintiff's conclusion that the adjective "road-building" as used in the certificate limits the machinery to be transported and does not limit the "equipment" to that used in road-building. If we were to accept plaintiff's interpretation we would make a finding, overruling the Commission, that the certificate grants double-barrelled authority for transportation of (1) road-building machinery and (2) equipment requiring special equipment. Nothing in the record gives such import.

The term "road-building machinery and equipment" is a term commonly used by the Commission in its certificates and permits, and is well understood by the industry to embrace only machinery and equipment associated with road building. In fact, its use is so common that it was one of the 25 commodity descriptions considered by the Commission in 1953 in Descriptions in Motor Carrier Certificates, 61 M.C.C. 209, 258, 286–87, in an effort to achieve a greater uniformity in its most common commodity descriptions. Obviously, if a complete heavy hauling service had been intended, it would not have been disguised within the language of such a common and well understood term as "road-building machinery and equipment."

The record before this court included a transcript of the hearing of February 3, 1944, a part of the processing of the initial application of Southeastern. The very genesis of Southeastern's claim is perfectly clear from that record. C. G. Fuller, known in South Carolina as one of the outstanding road builders of the State, and owner of 90 percent of Southeastern stock, needed transportation of his road-building machinery and the equipment incidental. Other contractors also expressed such a need. That the machinery and/or equipment requiring special (transportation) equipment was for road building is obvious from the record before the examiner. Southeastern's witnesses to the convenience and necessity of the certificate were all road machinery personnel. Without detailing the testimony the court notes the inclusion of a representative of Jeff Hunt Road Machinery Company of Columbia, S. C.,[5] a representative of Southeastern Construction Company, a salesman for Deconynck-McDaniel,[6] a salesman[7] who sold Osgood and General shovels, drag lines, road rollers, et cetera, and the president of Southern Construction Company, obviously a road building company. Witnesses for protestants added to the general climate of the hearing, that of road construction companies endeavoring to

---

5. Known by trade and reputation to be one of the larger road machinery houses in South Carolina.

6. Seller of ditching machines, drag lines, bulldozers, etc., according to the transcript.

7. Gaines B. Harrison testified he was in the business of selling road machinery.

get certified public transportation for road building and road equipment. The examiner had ample testimony to support his report, as the Commission later found.

The transcript of the August 21, 1946, hearing on the application for extension into North Carolina has supporting exhibits in the form of requests for the South-North Carolina service by various companies. A letter from Boyle Construction Company of Sumter, South Carolina, recites its highway contracts in North Carolina, as do letters from M. L. Gaines, Inc., of Columbia, South Carolina, American Construction Company of Columbia, South Carolina, Bell-Lott Road Machinery Company of Columbia, South Carolina, and G. E. Moore Construction Company of Greenwood, South Carolina. At this hearing it developed Fuller was principal stockholder of Southeastern at the time.[8] At the investigation hearing of 1964, there appeared M. L. Gaines and other supporting witnesses of Heavy Duty Haulers, Inc., which, in 1952, had purchased the rights of Southeastern. It affirmatively appears that, except for the 32[9] claimed violations, the operation under the certificate did not materially change over the years 1946 to 1964. There is a sufficiency of evidence in the investigation hearing in the record to reaffirm the decision of the examiner and the Commission. Some of the wit-

nesses tried to deny the impact of their exhibit letters attached to the 1946 hearing, finally admitted the discrepancies.[10] The tenor of the testimony was the same; the witnesses were, in fact, road building contractors, or those engaged in the sale of road building equipment.[11]

The Commission, in exercise of its authority under section 208(a)[12] of the Act, has decided that the commodity description should not be fragmented in this fashion, but instead should be read as a whole. When viewed as a single entity it is clear that the adjective "roadbuilding" modifies both "machinery" and "equipment," and that the commodity description embraces only such items which constitute "roadbuilding machinery" or "roadbuilding equipment," and which, further "require the use of special equipment." The Commission reasoned:

Under the construction advanced by respondent, the words "road building" would modify only "machinery" and not "equipment." The latter term [equipment] invariably is used by this Commission in commodity descriptions in connection with particular commodities, and that term, standing alone, is obviously vague and very indefinite. Acceptance of respondent's interpretation would lead to the absurd position that this Commission, in the pertinent commodity descriptions, chose to include an extraordinary grant of au-

8. Witness Richard E. Johnson, nephew of Fuller, Manager of Southeastern, testified on redirect examination:
 "Q. (Mr. Graham) Mr. Johnson, with reference to Mr. C. G. Fuller being a contractor, state whether or not his contracting business has been disbanded?
 * * * * *
 A. It has been split up. Various superintendents have gone in business for themselves.
 * * * * *
 Q. What other road-building machinery and equipment requiring special equipment if it is to be moved, does Southeastern Equipment, Inc. deal with * * * ?" (p. 34 TR).
 * * * * *
 A. None."

9. Involving about $30,000 in revenue over a period of three to four years.

10. A witness from State Machinery and Supply Company, after testifying on direct examination that he sold quantities of "other" machinery, finally admitted on cross examination that he handled "very few items that were not road machinery" and that he never *shipped* other than road machinery. A witness for American Construction Company admitted he "quit the business" when he found out he wasn't making money off of "road jobs."

11. We cannot use the term machinery and equipment interchangeably because as the examiner observed (p. 164 TR of Jan.1964) "machinery is equipment but not all equipment is machinery.".

12. 49 U.S.C. § 308(a).

thority to transport *all types* of equipment in the phrase "road building machinery and equipment," a phrase strongly connoting a limited scope of operations. \* \* \* We agree with the examiner that the term "road building" applies to both machinery and equipment.

Carrier's arguments bear marked similarity to the arguments rejected by the courts in J. B. Acton, Inc. v. United States, 221 F.Supp. 174, 177–178 (W.D. Mo.1963), affirmed 376 U.S. 779, 84 S.Ct. 1133, 12 L.Ed.2d 83; and Converse v. United States, 109 F.Supp. 807, 808–809 (N.D.Calif.1953). In the *Acton* case, the plaintiff held authority to transport "oil-field equipment, machinery and supplies." Plaintiff contended that this constituted two separate grants of authority: (1) oil-field equipment, and (2) machinery and supplies (regardless of whether such machinery and supplies have any relationship to oil-field use). The court, however, upheld the Commission's position that the certificate was limited to equipment, machinery, and supplies intended for use by the oil-field industry, stating:

As was noted in Converse v. United States, supra, if the plaintiff should prevail, then under the general class of machinery and materials (which in the unlimited sense covers nearly everything) plaintiff could usurp the right to transport practically all material things of every nature in the territory covered by its certificate to the impairment of every permit heretofore granted in said territory.

221 F.Supp. 178.

Plaintiff urges that it is urgent for the Commission to grant to it, as a "heavy hauler" nothing less than authority to perform a complete service limited only to "equipment requiring special equipment." Examination reveals, however, that the Commission has consistently held that a "heavy hauler," like all other motor carriers, is limited to and by the terms of its certificate. For example, in Mitchell Bros. Truck Lines-Investigation, 91 M.C.C. 267, 273, sustained sub nom.

Mitchell Bros. Truck Lines v. United States, 225 F.Supp. 755 (D.Or.1963), affirmed 378 U.S. 125, 84 S.Ct. 1647, 12 L.Ed.2d 744, reh. denied 379 U.S. 872, 85 S.Ct. 19, 13 L.Ed.2d 78, the carrier was authorized to transport "heavy machinery." Mitchell contended that its certificate should be construed to encompass a complete heavy hauling service. The Commission's rejection of that contention was upheld by the court on appeal, stating:

Respondent's contentions that the term 'heavy machinery' refers to a complete heavy hauling service is without merit. Although 'heavy machinery' and 'commodities the transportation of which, because of size and weight, require the use of special equipment' have both been referred to as commodity descriptions of 'heavy haulers' and although it has been found, in proceedings in which modification of 'grandfather' authority was sought and granted that a carrier authorized to transport only 'heavy machinery' should have been, and would for the future be, authorized to perform a complete heavy hauling service, the two commodity descriptions under consideration are not synonymous. They are analogous, but any commodity transported under the description 'heavy machinery' must be 'machinery.' \* \* \* See Dayton Transportation Corp., Ext.—Iron & Steel Articles, 79 M.C.C. 713, 715, C & H Trans. Co., Inc., Clarification of Authority, 88 M.C.C. 87, 94 and Sam Gottry case, supra (86 M.C.C.) at pages 710 and 711. [Emphasis added].

225 F.Supp. 759 footnote 4.

We are further urged to hold that the inclusion of the "intended use test" in the Commission's conclusions is unreasonable on its face. There is no question but that the Commission has ruled that the intended use of the machinery or equipment be for road building nor room for doubt. Had the certificate read simply "machinery and equipment," there would be an absence of limitation. The words "road building" limit the entire

transportation authority of plaintiff, as it did its predecessor. There is neither reason nor excuse to enlarge or expand the meaning of the language used. We do not depart from the ordinary meaning of the words to reach this conclusion. One cannot read the entire record in the case and escape the conclusion that from the very beginning the commodity scope was limited to those items used in or incidental to road building. It would not be amiss to classify the company as a road building transportation company.

Andrew Nelson v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), (rehearing denied) is authority for the soundness of the intended use test. The court there struck down arguments that intended use restrictions are never applied to commodity descriptions, and cannot be applied retroactively by post-certificate interpretation. The language is clear.

Appellant contends that the permit language cannot embody an intended use restriction because such restrictions were not formulated by the Commission until after issuance of Nelson's permit and cannot be retroactively applied as a limitation on the same. The Commission challenges the assertion that the intended use restriction was never applied prior to issuance of the permit. It is unnecessary for us to resolve that question, however. Assuming that the intended use test first appeared as a commodity description technique after appellant's predecessor obtained his permit, we think the Commission still free to interpret the permit as it has done. Its determination accords with the common, ordinary meaning of the words used, and in no way strains or artificializes that meaning. If the controverted words fairly lend themselves now to the construction made here, they always have done so. Consequently, any retroactive application of the intended use test could work no prejudice to appellant; once it is determined that the ordinary meaning of the description is neither more nor less than the Commission's

interpretation, the manner in which the Commission arrived at its conclusion is not controlling.

78 S.Ct. 496, 500, 2 L.Ed.2d 484, 489, 490.

The "intended use test" refers to a commodity description technique in which the commodities that the carrier is authorized to transport are defined in terms of their *intended future use.* Thus, "building materials" means commodities intended for use as materials in a building; "contractors' machinery and equipment" means machinery and equipment intended for use by a contractor, "mining and construction equipment" means equipment intended for use in mining and construction, et cetera. As pertinent here, "road building machinery and equipment" thus means machinery and equipment intended for use in road building. This court recognizes no difficulty of ascertainment as to the intended use of the shipped items. Certainly no witness offered in any of the hearings attested to such a difficulty.

■ The carrier's duty of ascertaining the intended use of a particular commodity is, in practice, relaxed by the use of a fair and reasonable standard. Insofar as machinery and equipment predominantly used in road building are concerned, the carrier may take advantage of a presumption that they are intended for use in road building, and may accept the shipment without question. This presumption may be utilized in all circumstances (except, of course, in those instances in which the carrier in fact has notice or knowledge of a contrary intention). By relying upon this presumption, the carrier may carry on its operations in a practical and workable manner. Furthermore in its opinion the Commission defines and clarifies in a manner designed to avoid confusion or ambiguity: .

We think it clear that respondent may transport machinery and equipment requiring special equipment and predominantly used for road construction without investigation as to the ultimate use to be made of them, so long as it has no knowledge or notice

that some items being transported are likely to be used in an endeavor other than road construction. In the absence of such knowledge or notice, it is justified in assuming that such commodities ultimately will be used in road building. Conversely, if some knowledge or notice of another use is present, respondent has the burden of acquiring knowledge of the actual intended use, and, if such intended use is for an activity other than road construction, then that shipment would be beyond the scope of respondent's pertinent authority.

We find no unreasonable, arbitrary, impractical or inappropriate conclusion or logic in the application of this principle to the issues of this case.

Plaintiff's second contention is that, if the Commission's *interpretation* of its existing certificate is valid, then it is entitled to *modification* of the certificate so as to authorize a complete heavy hauling service. The basis for the requested modification is plaintiff's claim that, at the time the certificate was originally issued to plaintiff's predecessor, it was intended (by both the Commission and plaintiff's predecessor) that a complete heavy hauling service be authorized.

 The burden of proof was on plaintiff to establish, by clear and convincing evidence, that the certificates received by its predecessor did not accurately reflect the intention of both the Commission and its predecessor as reflected in the underlying record. The Commission has found that plaintiff has not discharged that burden. This court agrees.

The original examiner's report in this case was served March 11, 1964. Just two days prior thereto—on March 9, 1964—plaintiff filed a Petition for Clarification and Modification of Certificate No. MC–109430 (the certificate at issue herein), and a petition seeking reopening and consideration in a consolidated proceeding with the instant case of the proceedings in which plaintiff's predecessor had originally obtained the operating authority. By an Order served May 28, 1964, Division I of the Commission denied the petitions:

For the reasons (a) that the matters involved with respect to No. MC–109430 and the related proceedings are already at issue in No. MC–C–4108, [the instant proceeding], (b) that pending a final determination in No. MC–C–4108, wherein there has been an oral hearing and an examiner's recommended order, further consideration of the plea for relief with respect to No. MC–109430 and the related proceedings is not necessary or desirable, and (c) that no sufficient or proper cause appears for staying or reopening No. MC–C–4108 for further hearing or for granting any of the other relief sought.

We are now informed that the Commission has under consideration, in fact has had a hearing on, the petition for modification, that consideration was reopened after commencement of this action. Since the issue is now pending before the Commission this court will not preempt. Nor is anything in this opinion designed toward that decision.

Plaintiff has failed to prove the decision of the Commission is unreasonable or clearly erroneous.

The injunction sought by plaintiff is denied.

The temporary restraint heretofore effected by this court is abated and removed.

The decision of the Commission is affirmed.

The action is dismissed.

HAYNSWORTH, Chief Judge (concurring):

The only substantial question in the case is whether the words of the grant were used in a generic sense or whether they refer to the cargo owner's intended use of the equipment upon its arrival at its destination. The Commission has construed it under the intended use test.

I cannot say that the words are not susceptible to the Commission's construc-

tion, though, facially, the words "road building machinery and equipment" have a *strong* generic ring. Nor can I understand why as a matter of policy, the Commission should undertake to apply an end use test to *heavy* equipment, generally identified as road building equipment, which because of its weight or size requires special carriage equipment. If the carrier has provided itself with special carriage equipment to transport heavy and bulky bituminous pavers, the record discloses little reason for denying it the right to serve the needs of its road building customers when they contract to place bituminous concrete on the runways of an airport or on a shopping center's parking, access and exit areas.[1] There is no suggestion that the business of placing bituminous concrete is fractionated into subgroups of specialists. A construction company deriving its major revenues from highway construction does obtain supplemental revenues from the same kind of work on other projects.

In other instances, however, the Commission has clearly prescribed end use tests, and it may be that they are useful in avoiding peripheral problems which almost certainly would arise if this Court undertook to declare that the words are to be construed in their broad generic sense. Unlike the Commission, this Court is unable to impose general or specific end use limitations upon a basic generic construction. Meanwhile, until the Commission exercises its plenary authority to enlarge the grant within reasonable bounds clearly defined, there may be virtue in the certainty an end use test provides.

Since the present record does not warrant judicial rejection of the Commission's conclusion that the words of the original grant were intended to be construed under an end use test and since proof of operations under the grant does not show Commission acquiescence in any other construction, I join in the opinion of my brother, Hemphill.

1. Neither is a conventional road, though runways and taxi strips are airplanes' roads and parking lots are intended for the use of motor vehicles.