**CHEM–HAULERS, INC.,**
**Petitioner-Appellant,**

v.

**INTERSTATE COMMERCE COMMIS-**
**SION and United States of America,**
**Respondents-Appellees.**

**No. 78–2566**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 1, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Leonard A. Jaskiewicz, William H. Shawn, Washington, D. C., for petitioner-appellant.

Griffin B. Bell, U. S. Atty. Gen., U. S. Dept. of Justice, Mark Evans, I.C.C., Gen. Counsel, Frederick W. Read, III, Assoc., John P. Fonte, J. Michael May, I.C.C., Washington, D. C., for respondents-appellees.

Harold R. Ainsworth, New Orleans, La., for Bowman Transp., Inc., et al.

Richard H. Streeter, Washington, D. C., for Pre-Fab Transit Co.

Charles Ephraim, Washington, D. C., for Bowman, George Transfer, and Eck Miller.

Donald E. Cross, Washington, D. C., for Tajon, Inc.

Kim D. Mann, Washington, D. C., for intervenors.

Before CLARK, GEE and HILL, Circuit Judges.

PER CURIAM:

Petitioner Chem-Haulers, Inc. is operating under a certificate of public convenience and necessity issued by the Interstate Commerce Commission. The certificate denominated Sub 108, authorizes it to transport "[g]ravel, sand, clay, ore, slag and products composed of or produced from such commodities except in bulk, in tank vehicles" over regular routes between points in Minnesota, Iowa, Missouri, Arkansas, and Louisiana, and all states east thereof, subject to minor restrictions not at issue here. Pursuant to this certificate, Chem-Haulers published rates on hundreds of iron and steel and aluminum products, metals and alloys, brick and related commodities, and glass. The instant action is a petition for review of the Commission's decision in *Various Commodities, Chem-Haulers, Inc.,* No. 36249, which consolidated six separate proceedings for administrative appeal. The challenged Commission decision interpreted Chem-Haulers' Sub 108 authority narrowly and ordered the carrier to cease and desist conducting operations outside the scope of that authority.

Chem-Haulers attacks the restrictive interpretation of its certificate of authority to transport "products of" the named commodities. The Commission held that authorization for "products of ores" was limited to those products resulting from the first stage of manufacture or processing—iron or aluminum metal in the form of ingots, billets, pigs, blooms, or slabs. Chem-Haulers, relying upon a literal definition of "products," argues that it is authorized to transport any article that had its origin in one of the five named commodities. This position was rejected by the Commission by reasoning that the items for which Chem-Haulers was seeking approval were products of iron and aluminum and not "products of ores." The Commission further held that because glass and glassware assume a whole new identity separate from their components, they could not be considered "products of

sand." Thus, the Commission's order interpreted Chem-Haulers' authority to encompass only the five named commodities and first-stage manufactured products of those commodities; the interpretation specifically excluded steel in any form and glass or glassware. Chem-Haulers asks us to reverse this order.

The interpretation of the scope of the certificates issued by the Interstate Commerce Commission is primarily the responsibility of the Commission. We shall not reverse its action unless it is capricious, arbitrary, or clearly erroneous. *Andrew G. Nelson, Inc. v. United States,* 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958); *Dart Transit Co. v. United States,* 567 F.2d 818 (8th Cir. 1977). We are not concerned with either the weight of the evidence or with the soundness of the Commission's reasoning. *Mitchell Brothers Truck Lines v. United States,* 225 F.Supp. 775 (D.Or.1963), *aff'd,* 378 U.S. 125, 84 S.Ct. 1657, 12 L.Ed.2d 744 (1964); *Eagle Motor Lines, Inc. v. United States,* 236 F.Supp. 502 (N.D.Ala.1964). After canvassing the entire record, we do not believe that the Commission's interpretation of the terms at issue was capricious or arbitrary or clearly erroneous. The

Commission has great expertise in such interpretations, and its action here was both reasonable and consistent with legal principles. The broad, literal definition of "products," for which Chem-Haulers argues, has not been favored by this court, *Black v. Interstate Commerce Commission,* 167 F.2d 825 (5th Cir.), *cert. denied,* 335 U.S. 818, 69 S.Ct. 40, 93 L.Ed. 373 (1948), or by the Commission, *e. g.,* Ace-Doran Hauling & Rigging Extension—Multiple States, 119 M.C.C. 40 (1973); P. Saldutti & Son, Inc., Interpretation of Permit, 63 M.C.C. 593 (1955); Eclipse Motor Lines, Inc., Interpretation of Certificate, 52 M.C.C. 391 (1951). The Commission based its interpretation on its prior decisions and on transportation industry usage, and it cannot be said that the order complained of lacks a rational basis.[1]

The order of the Commission is AFFIRMED.

---

1. Chem-Haulers also argues that it had no notice that its Sub 108 authority would be interpreted below and that it did not receive a plenary hearing on the scope of its authority. These contentions are clearly without merit. The verified statement of Chem-Haulers' own employee refutes the lack-of-notice argument. Moreover, the consolidated proceedings gave Chem-Haulers an opportunity to litigate fully the scope of its Sub 108 authority relative to all

rates premised on the certificate. Chem-Haulers presented an expert witness and 22 supporting shippers, all of whom testified concerning the interpretation of Sub 108; it cannot now be heard to say that no full and fair hearing was afforded. Chem-Haulers' final allegation that *Ace-Doran* was given res judicata effect contrary to assurances given this court is frivolous.