CAROLINA FREIGHT CARRIERS CORPORATION et al., Petitioners,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,

J & P Properties Inc., Intervenor.

No. 79–1149.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 1980.

Decided July 30, 1980.

Jerome Nelson, Associate Gen. Counsel, I. C. C., John J. Powers, III and Peter de la Cruz, Attys., Dept. of Justice, Washington, D. C., were on brief, for respondents. H. Glenn Scammel, Atty., I. C. C., Washington, D. C., for respondent, I. C. C.

J. Mark Manner, Atty., Dept. of Justice, Washington, D. C., for respondent, United States of America.

James Anton, Washington, D. C., was on brief, for intervenor.

J. Curtis Bradley, III, Washington, D. C., with whom John C. Bradley, Washington, D. C., was on brief, for petitioners.

Charles A. Stark, Atty., I. C. C., Washington, D. C., with whom Mark L. Evans, Gen. Counsel, Washington, D. C., for petitioners.

Before ROBINSON, MacKINNON and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

Four competing carriers[1] petitioned the Interstate Commerce Commission (ICC) to set aside the agency's construction of a motor carrier certificate entered in Docket No. MC–C–9006, *J & P Properties, Inc.—Investigation and Revocation of Certificates.* J & P Properties, Inc., the Intervening Respondent, holds authority to transport "such commodities as are used and dealt in by nurseries." We affirm the construction given the certificate by the ICC.

## I.

In 1976 the ICC instituted an investigation[2] into whether J & P Properties, Inc. was operating outside its scope of authority as designated in its certificate of public convenience and necessity.[3] The Bureau of Investigation and Enforcement also partici-

---

1. The four petitioners are Carolina Freight Carriers Corp., Mercury Motor Express, Inc., Pilot Freight Carriers, Inc., and Ryder Truck Lines, Inc.

2. The ICC had imposed a three year expiration date on the initial grant of authority to the carrier because of a finding of serious violations by the carrier. The grant was to expire on April 2, 1974. Johnny Brown's, Inc., Extension—Winchester, Va., 111 M.C.C. 905 (1970). On August 20, 1973, J & P filed a petition to remove the three year term limitation. Because of a failure to demonstrate full compliance with the certificate again, the carrier was issued the authority for only another two year period. However, the ICC stated in the certificate that the two year limitation would not apply if, within nine months prior to the expiration of the term, the carrier could demonstrate that it had been in full compliance with the terms of the certificate, the Interstate Commerce Act, and the agency's rules and regulations. The investigation in the instant case arises from a petition filed on January 14, 1976 by J & P for removal of the two year term limitation in, and for permanent extension of, Certificate No. MC–136363 (Sub. No. 7). (J.A. 79–81) This investigation was authorized under 49 U.S.C. § 304(c), and 49 U.S.C. § 312(a) to see whether J & P was engaging in the transportation of property in violation of 49 U.S.C. § 306(a)(1). The Interstate Commerce Act was recodified without substantive change by Pub.L.No. 95–473, Oct. 17, 1978 (92 Stat. 1337). The sections listed above are now 49 U.S.C. § 11701, 49 U.S.C. § 10925, and 49 U.S.C. § 10921 respectively. Additional changes were made in the law on July 1, 1980, by the Motor Carrier Act of 1980. This Act in Sec. 6 thereof provided, *inter alia*, for the removal of certain restrictions on motor carrier operation. It specifically directed the Commission to:

> (h)(1)(B) implement, by regulation, procedures to process expeditiously applications of individual motor carriers of property seeking removal of operating restrictions in order to—
> (i) reasonably broaden the categories of property authorized by the carrier's certificate or permit . . .
> (v) eliminate any other unreasonably restriction that the Commission deems to be wasteful of fuel, inefficient, or contrary to the public interest.

Pub.L. No. 96–296, 94 Stat. 793, 796–97.

3. The specific language of the certificate under review, issued in Docket No. MC–136363, grants the authority to transport the following items:

> Sub 1—(1) Canned goods (except canned coffee) when moving in the same vehicle with such commodities as are used and dealt in by nurseries, or commodities otherwise exempt under the provisions of section 203(b)(6) of the Interstate Commerce Act. (2) Of commodities as are used and dealt in by nurseries (except commodities in bulk) when moving in the same vehicle with: canned goods (except canned coffee between points in Florida, on the one hand, and, on the other, points in Connecticut, Delaware, Idaho, Maryland, New Jersey, Oregon, Rhode Island, Virginia, Washington, West Virginia and the District of Columbia, with certain restrictions; and (3) Commodities as are used and dealt in by nurseries (except commodities in bulk) when moving in the same vehicle with commodities otherwise exempt under provisions of section 203(b)(6) of the Interstate Commerce Act, between points in the United States (except Alaska and Hawaii, and except from Roseville, Zanesville, Scio and Logan, Ohio, and points within 5 miles of each and South Rockwood, Mich.);

pated in the hearings. The commodities being carried included fans, roof vents, chimney caps, cowls, shutters, iron and aluminum pipe fittings, gas cans, petroleum oil, wicker lawn furniture, aluminum stepladders, Christmas items, paper boxes, corrugated board, outdoor barbecue grills, golden flame logs, baskets or hampers, storage sheds and green houses, tables or trays, folding stools, portable seats, rural mail boxes, steel outlet plates, soy cake, clay, and fruit cake in tins. (Petitioner's App. A)

Six witnesses testified for J & P, all with nursery experience of varying degrees and kind. All testified that the commodities being carried were commonly dealt in by nurseries. On the basis of this evidence, the Administrative Law Judge determined that J & P was operating within the scope of its authority. He held that

> the term nursery, like drug stores, has through competitive necessity, acquired over the years a broader meaning. The fact that there exists today nurseries whose only products are growing plants does not necessarily narrow the definition or the description of the modern nursery.

(J.A. 86) The ALJ granted J & P a permanent extension of its certificate of public convenience and necessity.

Subsequently, the Petitioners intervened and filed exceptions to the Initial Decision. The ICC affirmed the ALJ's Initial Decision. It formulated the issue before it to be "whether the commodities admittedly transported by J & P are a type normally used or dealt in by nurseries." [4] (J.A. 91) It held:

> Although these items may seem far removed from the plants and garden supplies once regarded as the normal preserve of a "nursery", we will not close our eyes to the changes that have occurred in

the nursery business in recent years. Since modern nurseries now routinely use and deal in the types of commodities here at issue, these commodities are within the scope of J & P's certificate and the transportation performed has not been shown to be unlawful.

(J.A. 91–92) [5]

Carolina Freight Carriers, one of the intervenors, sought a finding that an issue of general transportation importance was involved. The ICC denied this request, and the Petitioners filed this petition for review, in which J & P intervened.

I.

The first task for the agency was to define the scope of authority in the certificate. It is standard law that the ICC's interpretation of a certificate should not be set aside unless it is clearly erroneous. *Nelson, Inc. v. United States*, 355 U.S. 554, 558, 78 S.Ct. 496, 498, 2 L.Ed.2d 484 (1958). Great weight should be given to this interpretation by the reviewing court.

The exact wording of the scope of authority in the instant case, i. e. "such commodities as are used and dealt in by nurseries", is somewhat ambiguous under traditional ICC terminology. The ICC designates operating authority by *identifying the commodities* to be carried in three ways:

> (a) by naming them specifically (a practice which is impractical in many instances), (b) by the use of generic or class terms, and (c) by reference to the intended future use.

*C & H Transportation Co., Interpretation of Certificate*, 62 M.C.C. 586, 587 (1954). The generic description most often uses the term "dealt in by", for example, "such commodities as are *dealt in by* [name of particu-

Sub 7—Such commodities as are used and dealt in by nurseries between Florida on the one hand, and, on the other, points in the United States (except Alaska and Hawaii). Petitioners' Appendix B at 7a.

4. According to Appendix A affixed to the Petitioner's Brief, none of the commodities was destined for traditional nurseries; instead, they were going to stores like supermarkets, drug-

stores, department stores, discount shops, and home centers.

5. The agency did acknowledge a few minor infractions by J & P's transporting such things as canned cookies. However, these actions did not justify a finding of willful violation of regulatory requirements since they were isolated in character. (J.A. 92)

lar industry]." The commodities need not be shipped to the industry specified in the certificate, but the commodities carried must be commonly or ordinarily dealt in by the business. For instance, if the certificate designated "such commodities as are commonly dealt in by hardware stores", the carrier could transport hammers to drug stores, since hammers are commonly dealt in by hardware stores.

In contrast, when the intended use designation exists, the commodities being shipped must be delivered to members of the particular class of shippers designated, and they must be intended for use by that shipper. For instance, in *CRST, Inc.—Purchase—Lee Bros., Inc.*, 127 M.C.C. 328, 332 (1978) the ICC determined what commodities could be transported under a certificate of authority designating commodities "used" by 5-and-10 cent stores. The agency noted that this could "include carcass meats for its store lunch counter or even a 100-ton air conditioner for its roof." *Id.* However, this wide variety of commodities could only be transported for 5-and-10 cent stores.

The certificate of authority under review seems to combine the two terms. When evaluating the commodities being shipped, the Court could conclude that they are such goods as are traditionally "dealt in by" nurseries (although this issue is discussed in more length in II), but they could hardly be considered to be "intended for use" by nurseries. The Court notes that the shippers and the recipients of the commodities range far from even the most liberal interpretation of a nursery. See note 5, *supra.*

The ICC, however, interprets this certificate to contain a generic designation, despite the presence of the words "used by". It interprets the term "dealt in" with the term "such commodities as". This latter phrase generally "allows service to any consignee from any consignor regardless of the business in which they are engaged." *Jack Cole Co. v. Brooks Trucking Co., Inc.*, 105 M.C.C. 41, 46 (1967). Such an open ended shipper category is only compatible with the generic designation indicated by the phrase "dealt in by". By concentrating on the

'such commodities as" phrase, the agency is acting in accordance with *Nelson, Inc. v. United States*, 355 U.S. 554, 560, 78 S.Ct. 496, 499–500, 2 L.Ed.2d 484 (1958) where the Court explained that:

> an examination of the Commission's decisions indicates use of a definite and distinctive linguistic pattern whenever descriptions are made by reference to place of sale: if the Commission's purpose has been to authorize transportation of goods like those named in the permit, that purpose consistently has been revealed by use of the phrase "such as," or a close variation thereof.[9]

The Court's footnote 9 cites numerous motor carrier cases where the certificates specify "such commodities as are dealt in by . . ." or "such commodities as are sold by . . .." Although each description included the term "dealt in by" or "sold by", the Court seemed to be concentrating on the "such as" term. *See also Jack Cole Co. v. Brooks Trucking Co., Inc., supra.*

■ Therefore, the agency had authority for relying on the terms "dealt in" and "such commodities as" to the exclusion of "used by" to arrive at the conclusion that the designation in the instant certificate was a generic description. Consequently, J & P could properly transport *to any shipper* commodities that are traditionally "dealt in by" nurseries. We find this interpretation to be reasonable. At the same time, we find it surprising that the agency must use such terms, when they are open to such a wide range of interpretations. "Dealt in" is very far from being a precise term of art. However, our concern does not cause us in this instance to reverse the ICC's holding.

## II.

The second matter before this Court is to determine whether the ICC reasonably defined nursery and the kinds of commodities that are ordinarily dealt in by nurseries. Again, we conclude that the agency's interpretation was based on substantial evidence and was not arbitrary or capricious.

The Petitioners maintain that a "nursery", in plain and ordinary language, is

limited to "[a]n area where trees, shrubs or plants are grown for transplanting, for use as stocks for budding and grafting, or for sale." Petitioner's Brief at 25. This definition was used in cases concerning nurseries that do not involve transportation authority under the Interstate Commerce Commission. *See, e. g., Anderson v. Humble Oil & Refining Co.*, 226 Ga. 252, 174 S.E.2d 415, 417 (1970); *Suburbia Gardens Nursery, Inc. v. County of St. Louis*, 377 S.W.2d 266, 270 (Mo.1964) (en banc). Under Petitioners' logic, only the kinds of commodities sold by this limited kind of nursery could be transported to the shippers under J & P's certificate of public convenience and necessity.

However, the agency had substantial evidence before it to conclude that the modern nursery is much more than this traditional definition. The agency carries the primary responsibility to interpret this term. Six witnesses testified that the modern nursery commonly sells the kinds of commodities under investigation. These witnesses included two retail nursery store operators, two editors of nursery trade magazines, one horticulture consultant, and an officer of a nursery supply firm. One of the witnesses also served with the Florida Nurseryman & Growers Association. In essence, according to the evidence, the modern nursery is more of a lawn and garden center under the specialized understanding of the trade.

Finally, we agree with the agency that its decision was not a "new" grant of authority, as argued by the Petitioners. The agency was doing no more than interpreting the certificate of public convenience and necessity. When doing this, the agency is permitted to look prospectively at the generic descriptions under review.

[A] generic description is prospective in embracing commodities which fall within the classification but which were developed after issuance of authority because to isolate its meaning in point of time would destroy the utility of this method of describing commodity rights.

*Consolidated Freightways Corp. Ext.—Petrochemicals*, 92 M.C.C. 443, 447–48 (1963). Thus, the agency was not bound by the old and very limited meaning of the term "nursery".

Therefore, the order of the ICC is affirmed.

*Judgment accordingly.*