**REFRIGERATED TRANSPORT CO.,**
Inc., Watkins Motor Lines, Inc.,
Complainants,

v.

The UNITED STATES of America, and
the Interstate Commerce Commission, Defendants.

Civ. A. No. 7967.

United States District Court
N. D. Georgia,
Atlanta Division.

Jan. 7, 1963.

Watkins & Daniell, Atlanta, Ga., for plaintiffs.

R. J. Reynolds, Jr., Atlanta, Ga., James F. Miller, Kansas City, Mo., for intervenor.

Charles L. Goodson, U. S. Atty., Atlanta, Ga., for defendants.

Before BELL, Circuit Judge, and HOOPER and MORGAN, District Judges.

GRIFFIN B. BELL, Circuit Judge.

Refrigerated Transport Co., Inc. and Watkins Motor Lines, Inc., complainant corporations, operate as motor common carriers for hire in interstate commerce under and by virtue of various Certificates of Public Convenience and Necessity issued by the Interstate Commerce Commission. Their interest here is to protect their business of transporting frozen fruit juices and frozen fruit concentrates. They seek to set aside in whole or in part a final order of the Interstate Commerce Commission granting Barsh Truck Lines, Inc. authority to operate in interstate commerce as a common carrier by motor vehicle of frozen fruit juices and frozen fruit concentrates in mixed shipments with canned citrus products from points in Florida, to points in Arkansas, Iowa, Kansas, Missouri, Oklahoma, and Nebraska. Jurisdiction is based on 28 U.S.C.A. §§ 1336, 2284 and 2321–2325 and 49 U.S.C. § 305(g).

The authority was granted on two applications, No. MC–119450 and No. MC–119450 (Sub–No. 2). One application involves shipments from Bartow, Florida and points within fifty miles thereof to the designated six state area; while the other requested the same authority for all other points in Florida. Barsh had theretofore been authorized to transport canned citrus products from Bartow and points within fifty miles of Bartow but had no authority for other points in Florida.

The findings of the Examiner, on a consolidated hearing of the two applications were adopted by the Commission. The conclusions of the Examiner were adopted save in two important respects, to be discussed infra. The order of the Commission became administratively final upon denial of the petition of protestants, of whom two are complainants here, for reconsideration.

The evidence adduced before the Examiner showed that Barsh was transporting non-frozen canned citrus products from the Bartow, Florida area to the designated six state area, and was in the process of equipping itself to handle mixed shipments on the same vehicle of frozen and non-frozen commodities. Five of its trailers were refrigerated and

five additional trailers of this type were on order. It was planned to equip all of the trailers with a track-mounted, insulated, plywood bulkhead suitable for moving to such position in the trailer as might be indicated by the load to separate the frozen and non-frozen commodities. Such equipment was available from the manufacturer.

The applications were supported by five shippers. The bulk of their shipments would continue to move through present channels but each proposed to use the new service sought from two to five times per month. The new service would be used in truckload volumes with the amounts of frozen and non-frozen items varying with the shipment. In this way, the items to be shipped could be consolidated more rapidly by drawing upon accumulated quantities of both frozen and non-frozen products, and in turn, provide faster delivery to customers. It was represented that the service was needed, would create new markets, and that the presently available less than truckload service was not satisfactory due to delay and damage.

The applications were opposed by complainants and other carriers engaged in transporting both frozen and non-frozen citrus products from Florida to the same six state area. None of these carriers offer mixed service, their authority being confined to either all frozen or all non-frozen service. The shippers were satisfied with the truckload service of these carriers to the extent that it is available, but it was undisputed that the mixed service for which authority was sought was a new service, and of a type not presently available in the involved area. The protesting carriers offered evidence to show that the present service was adequate, and that the Barsh theory of mixed shipments was not feasible. They also pointed out the adverse effect on their operations of any diversion of shipments to the new service.

The Examiner found that the present and future public convenience and necessity required the granting of the authority requested by Barsh, and that Barsh was fit, willing and able to perform such service and conform to the requirements of the Interstate Commerce Act. He recommended that Barsh be authorized to transport frozen fruits, frozen berries, frozen vegetables, frozen fruit juices, and frozen fruit juice concentrates in truckloads of mixed shipments with canned citrus products when moving at the same time and in the same vehicle from the point of final stop, if any, for loading to the initial stop, if any, for unloading of each vehicle. He rejected the offer of applicant that the proposed service be limited to mixed loads of which at least ten per cent should be constituted of frozen goods and the remainder of canned goods not requiring refrigeration, or vice versa, to insure that applicant would be prevented from transporting truckloads of either canned or frozen goods separately. His view was that it would be administratively impracticable and difficult of enforcement.

On a consideration of the exceptions of protestants to the report and recommended order of the Examiner, the Commission limited the scope of the authority granted to frozen fruit juices and frozen fruit concentrates in mixed shipments with canned citrus products. The restriction of "in truckloads of mixed shipments * * * when moving at the same time and in the same vehicle from the point of final stop, if any, for loading to the initial stop, if any, for unloading of each vehicle * * *" was eliminated. The certificate authorizing the operations in question has not yet been issued.

Our function in the review of this matter is well established:

"[The function of the reviewing court] is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done,

whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." United States v. Pierce Auto Freight Lines, 1946, 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821. See also Mississippi Valley Barge Line Co. v. United States, 1934, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260; Atlantic Coast Line Railroad Co. v. United States, M.D.Ga., 1962, 205 F.Supp. 360, aff. 371 U.S. 6, 83 S.Ct. 42, 9 L.Ed.2d 49; and 5 U.S.C.A. § 1009(e).

Complainants set forth many reasons to demonstrate that the Commission's grant of authority is not supported by substantial, competent and probative evidence. Among these are allegations that the testimony of a prime supporting shipper of Barsh should have been given no weight since it was shown that he had a financial connection with Barsh Trucklines, that there was no substantial evidence of record that the proposed service was operationally feasible, or that the presently existing services are inadequate, or that Barsh was fit, willing and able to perform the service. They contend that the grant of authority was based on rate considerations, that no need was shown for the new service, and that the Commission failed completely to consider the effect of the grant upon the objecting carriers. Moreover, they say, under the unrestricted grant of authority, Barsh will be able to provide transportation of full truckloads of frozen goods in direct competition with them.

■ A thorough study of the record convinces us that only the last of the allegations has merit. The question of the financial connection between Barsh and one of its supporting witnesses on the application was one of credibility and was for the Commission. Transamerican Freight Lines v. United States, D.C.Del., 1943, 51 F.Supp. 405; Loving v. United States, W.D.Okl., 1940, 32 F.Supp. 464,

aff. 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387, and the numerous authorities therein cited. The Commission could give as much or as little weight as it saw fit to the testimony of this witness, and there was ample supporting testimony without it.

■ We think it sufficient to say that, based upon our examination of the record as a whole, we find and hold that the evidence adduced not only adequately, but abundantly, supports the findings of the Commission as to feasibility, public need, fitness of applicant, and adverse effect on protestants in granting the authority. The record also demonstrates that the need for the service was based on considerations other than rates.

■ These were matters for the Commission and rest on a rational basis, assuming bona fide mixed service. Since, however, the entire application was premised on a need for mixed truckload service and the authority granted is not restricted to this end, we must remand for the imposition of a proper restriction. Else, the whole case fails as there is no rational basis of record for any order granting authority for service beyond that sought.

The only restriction imposed by the Commission was that Barsh had authority to transport mixed shipments between the designated points. The word "shipment" has been defined by the Commission to mean:

"* * * a quantity of freight received from one shipper, at one time, at one place, consigned to one consignee at a single destination under one bill of lading." Merchandise, Southwest Freight Lines, Inc., 51 MCC 112, 115.

It was conceded on argument that a bill of lading could cover more than one truckload of freight and thus it is clear that under the present grant of authority, Barsh could become the transporter of truckload amounts of frozen items in the same shipment with other truckloads

of non-frozen items. Indeed, the Commission recognizes that it is not necessary for a single shipment to move on a single vehicle at the same time. Commission's Administrative Ruling No. 11. Should this happen, Barsh would be in direct competition with the complaining carriers in the hauling of truckloads of frozen items, a situation for which no need had been shown by the evidence. Further, the present grant of authority goes beyond that requested by Barsh. Authority was requested merely to handle the frozen articles in mixed *truckloads* with canned citrus products, while the certificate granted can be construed to allow much more than this.

■ The Commission, and Barsh as intervening defendant, attempt to justify the grant as being impliedly limited by the language in the report of the Commission. This will not do in view of the established principle of law that certificates of public convenience and necessity speak for themselves and extraneous or antecedent facts may not be looked to in the absence of patent ambiguity or indefiniteness in the certificate. Andrew G. Nelson, Inc. v. United States et al., 1958, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484. The certificate in this instance and under these circumstances, if the grant of authority is to be sustained, must set out an appropriate restriction.

■ Further, it is contended that any sort of percentage restriction imposed would put an undue burden on the Commission from the standpoint of enforcement. The problem of policing any such requirement is urged as a reason for not imposing one. It is also urged that a restriction is not necessary in view of the fact that the Commission can revise or cancel existing certificates if applicant engages in subterfuge, 49 U.S.C.A. § 312 (a), or impose such reasonable conditions and limitations as the public convenience and necessity may from time to time require, 49 U.S.C.A. § 308(a). These arguments are without force. A restriction is possible of formulation that will add nothing to the enforcement problem.

The answer to the reserved statutory power of the Commission argument is that no case is made out for authority absent a restriction to mixed truckloads, and the authority granted may be construed otherwise.

We find and hold that the Commission erred in not properly restricting the authority granted. We leave the formulation of a restriction to the expertise of the Commission. It should not be a difficult task. Applicant suggested one. The Examiner imposed another. There may be others, but until so restricted the order appealed from is without a rational basis and must be suspended pending the imposition of an appropriate restriction; otherwise, set aside.

The case is remanded to the Commission for such further proceedings as may be deemed necessary and not inconsistent herewith.