**REFRIGERATED TRANSPORT CO., Inc.; Watkins Motor Lines, Inc.; Alterman Transport Lines, Inc.; Belford Trucking Co., Inc.; Clay Hyder Trucking Lines, Inc.; Commercial Carrier Corporation; and Argo Collier Truck Lines Corporation, Plaintiffs,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

**Greenstein Trucking Company, Intervenor.**

**Civ. A. No. 11402.**

United States District Court
N. D. Georgia,
Atlanta Division.

Feb. 4, 1969.

**6**

Watkins, Daniell, Davis & Serby, Atlanta, Ga., for plaintiffs.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., and Charles L. Goodson, U. S. Atty., Atlanta, Ga., for United States.

Robert W. Ginnane, Gen. Counsel, Steven Kazen, Atty., ICC, Washington, D. C., for Interstate Commerce Commission.

Martin .Sack, Jr., Jacksonville, Fla., for Greenstein Trucking Co.

Before BELL, Circuit Judge, and HOOPER and EDENFIELD, District Judges.

EDENFIELD, District Judge.

On June 10, 1963, Greenstein Trucking Company (hereinafter referred to as Greenstein) filed an application with the Interstate Commerce Commission, pursuant to 49 U.S.C. § 307, for a certificate of public convenience and necessity authorizing it to transport certain meats, refrigerated food, and dairy products from St. Paul, Minnesota, Chicago, and points in Wisconsin, to points in Florida, Georgia, Tennessee, South Carolina and Alabama.

The application as filed by Greenstein proposed three restrictions to be annexed to the certificate. These restrictions would have required that shipments originating in St. Paul be limited to those which were to subsequently stop at one or more points in Wisconsin to complete loading, and required that shipments from Chicago be limited to those which had originated at one or more points in Wisconsin and which only stopped in Chicago to complete loading. The third proposed restriction provided that stops in Alabama, Tennessee and South Carolina would be limited to shipments which were to be partially unloaded there, the remainder having final destinations in Florida and/or Georgia. The application, including these proposed restrictions, was published in the Federal Register. Protests were filed by seven railroads and 20 major motor carriers, including all of the plaintiffs in this action, save Commercial Carrier Corporation, which, according to defendants, owned complainant Clay Hyder Trucking Lines.

On October 18, 1963, notice of a hearing on the application was given to all of the complainants, and on December 19, 1963 the hearing was held before an Examiner for the Commission. At the hearing, five motor carriers, including two of the protesting carriers in the instant action, Alterman Transport Lines and Clay Hyder Trucking Lines, appeared. On July 24, 1964, the Examiner filed his report recommending that the Interstate Commerce Commission deny the application, for reasons no longer relevant here. Greenstein excepted to this report. Thereafter, on December 28, 1964, Operating Rights Review Board No. 3, designated by the Commission to review the Examiner's findings, filed its report on Greenstein's exceptions. The Review Board adopted the Examiner's statement of facts, reversed his recommendation, and granted the application. 106 M.C.C. 291 (1964). In granting the application, however, the

three restrictions contained in Greenstein's original application and published in the Federal Register were deleted, on the ground that the multiple pickup service restriction would serve no useful purpose and was administratively undesirable. The Board also concluded that a "mixed load" restriction, limiting the authority to mixed loads of meat and dairy products, would best protect existing carriers. 106 M.C.C. at 295. These restrictions were added in lieu of those proposed by Greenstein without any further notice or hearing.

Three complainants, including plaintiffs Alterman Transport Lines and Belford Trucking Company, filed petitions for reconsideration of this order. Belford's petition was filed on January 21, 1965, asking for leave to intervene, for reconsideration of the decision, and/or for a further hearing. Plaintiff Alterman's petition was filed on February 2, 1965. The plaintiffs contended, in short, that the grant proposed substantially exceeded the authority initially sought by Greenstein, included matter not covered by the original notice, would result in substantial detriment to them, and that no provision for notice or republication in the Federal Register was made in the order. By a Commission order of April 29, 1965, served May 6, 1965, the plaintiffs' petitions for reconsideration were denied and the Review

Board's decision affirmed. The Commission found, in substance, that Belford had not shown sufficient cause to justify intervention, and that the findings of the Review Board were in accordance with the evidence and the applicable law. On October 12, 1965, the Commission issued Greenstein a certificate of public convenience and necessity, containing the substituted "mixed load" restriction. This is the first of two Commission rulings at issue in this action. Docket No. MC–107818.

Nothing else transpired until August 7, 1967,[1] when plaintiffs filed a joint petition before the Commission asking that the matter be reopened for further hearing. The plaintiffs contended that the "mixed load" restriction was ambiguous, that Greenstein was violating the restrictions imposed and conducting unlawful operations under the certificate of convenience and necessity, and that the authority granted was much broader than that applied for and noticed in the Federal Register. Plaintiffs also noted that in a proceeding seeking similar authority for other territories, Greenstein was cross-examined about his operations under the certificate in question here and that Greenstein virtually admitted that it was making no bona fide effort to comply with the mixed load restriction and was, in fact, transporting solid truckloads of

1. Because of this delay, defendants also contend that plaintiffs' right of relief is now barred by laches. The court does not agree. There is no applicable statute of limitations, and it is abundantly clear that the mere running of time does not invoke the doctrine of laches. La Parr v. City of Rockford, 100 F.2d 564 (7th Cir., 1938), cert. den., 307 U.S. 624, 59 S.Ct. 821, 83 L.Ed. 1502 (1939); Pierce v. International Tel. & Tel. Corp., 147 F.Supp. 934 (D.N.J., 1957). Laches is an equitable doctrine addressed to the discretion of the trial court, Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); City of Erlanger v. Berkemeyer, 207 F.2d 832, 38 A.L.R.2d 918 (6th Cir. 1953), cert. den., 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411 (1953), in which each case must be determined according to its own particular circumstances. Chisholm v. House, 183 F.2d 698 (10th Cir., 1950). The crucial consideration is whether assertion of plaintiffs' cause, through lapse of time, would do an injustice to the defendants. Hunt v. Pick, 240 F.2d 782 (10th Cir., 1957). The court is of the firm opinion that under the facts of this case, no such injustice will ensue if the plaintiffs are permitted to pursue their action. Rather, it would be inequitable to bar plaintiffs' suit for a two-year delay under the particular circumstances of this case. Moreover, the decision here ultimately turns on a denial of procedural due process, and the court does not look with favor on a loss of constitutional rights by laches, especially where, as here, the parties have complained as long and vociferously as have these plaintiffs.

meat with only token amounts of dairy products. This activity was alleged to be in violation of authority, see, e.g., Barsh Truck Lines, Inc., Extension-Bartow, Florida, 92 M.C.C. 254, 255; Refrigerated Transport, Inc., et al. v. United States et al., 214 F.Supp. 536 (N.D. Ga., 1963), and to the detriment of movants. Plaintiffs urged that the Commission, upon further hearing, modify Greenstein's certificate, to grant no authority greater than that initially sought by Greenstein's application, limiting service to partial loading and unloading at the origin and destination points involved. In an order dated November 3, 1967 and served November 9, 1967, the Commission, per curiam, denied petitioners' motion to intervene and reopen further hearings. On or about December 3, 1967, plaintiffs sought judicial review of the Commission's decision.

Action is pursuant to 28 U.S.C. §§ 2284, 2321–2325 to set aside the order of the Commission entered in 1965, affirming the Review Board's grant of authority, subject to "mixed load" restrictions, and its 1967 decision denying leave to intervene and reopen hearings.

Plaintiffs allege several errors in the Commission's findings. First, they contend that there was no rational basis for a grant of broadened authority, as it exceeded that for which proof of need was shown and that which was applied for and published in the Federal Register. Next, plaintiffs argue that the "mixed load" restriction is ambiguous and must be replaced with measurable standards. They repeat their allegations that Greenstein has made no bona fide effort to comply with the mixed loads restriction or to adhere to any standards laid down by the Commission, and that Greenstein considers any volume of traffic "reasonable". Third, the plaintiffs contend that Greenstein's initial restrictions are valid and should be imposed, notwithstanding the fact that the Interstate Commerce Commission may deem

them undesirable. They argue that the original restrictions are not difficult to enforce. Last, they argue that lack of notice and republication of the broadened authority first added by the Review Board violates due process of law and vitiates the action. In short, plaintiffs are requesting that the certificate to Greenstein be modified after issuance.

Defendants raise a number of defenses. In brief, they argue that broad discretion is given decisions of the Commission, with only limited judicial review; that sufficient notice was given to plaintiffs of all of the Commission's actions; that the public convenience and necessity required Greenstein's operations; that attacks by plaintiffs on the "mixed load" restriction were without merit; that the Commission properly denied the plaintiffs' motion to intervene and reopen the case in 1967; and that plaintiffs are barred by laches from seeking judicial review, in that two years passed between the grant of authority to Greenstein and the motion to reopen the case.

Several facets of this controversy give the Court some concern. First and foremost is the question whether the plaintiffs were denied procedural due process by being denied a hearing as to the effects and consequences of the authority actually granted, as contrasted with that which was sought, particularly in view of the fact that the only hearing held (and the only matter noticed for hearing) related to an entirely different application with different restrictions. Second, there is the question of the ambiguity of the "mixed load" restriction which was granted without being sought. Five years ago, this same Court directed the Commission's attention to the ambiguous character of such a restriction,[2] although in that case the restriction was approved with the comment that clarification should and probably would be made by the Commission.

2. Refrigerated Transport, Inc., et al. v. United States, et al., 227 F.Supp. 1021 (N.D.Ga., 1964).

Unfortunately, the Commission failed to follow this suggestion, and the same matter has now arisen to haunt both the Commission and this Court for a second time. Finally, there is the question whether, independently of all other issues, the Commission should not, at the very least, have made some effort to ascertain whether Greenstein was in fact operating within the authority actually granted or was flagrantly exceeding the same as alleged by complainants.

On the first of these issues, we conclude that the matter must be remanded to the Commission for further consideration. We do not hold that the action by the Commission was wrong. What we do hold is that at some point in the proceeding, either initially or on the petition to reopen, plaintiffs should have been given a hearing and an opportunity to urge that it was wrong and to show, if they could, the pernicious consequences which they now claim. The Commission in its order concluded that the "multiple pickup service" restriction as originally proposed would "serve no useful purpose", and apparently concluded that the "mixed load" restriction was all that was required. Upon a full hearing, the Commission may conclude that this determination was correct; but plaintiffs are at least entitled to be heard on the substitution question, and thus far they never have been.

The Court is, of course, familiar with the rule that in granting operating authority the Commission may add to or delete from or change restrictions as public interests may require. We do not question this authority. It is also patent, we think, that some of these additions or deletions may require the publication of additional notices and further hearings; others may not. For example, if it appeared that a certificate as granted included territory not sought in the original application, no one would deny that further notice and further hearings would be required. Contrariwise, if the modification merely involved a change of language or a trivial correction, no one would argue that either further notice or hearing were necessary. Here, the Commission has stricken the restrictions originally sought by the applicant and has substituted a different restriction of its own. Plaintiffs say this alteration involves a matter of substance constituting a menace to their operation. The Commission, on the other hand, says that what it granted was substantially the equivalent of what was asked and, administratively, is more desirable. We do not know which of these positions is correct. On the merits of the case, we have no evidence on which to determine whether the Commission's action was reasonable or arbitrary. The question is one which addresses itself initially to the expertise of the Commission, and on it we express no opinion. We do hold, however, that the plaintiffs are entitled to show at a hearing, if they can, the gravity of the substitution. This opportunity has been arbitrarily denied.

The foregoing effectively disposes of this controversy, and such being the case, the Court should perhaps go no further. Two other facts were developed at the hearing, however, which may be of help to the Commission and which may indeed completely satisfy the demands of all concerned. Plaintiffs say, for example, that if the Commission would (1) define the phrase "mixed loads" as used in Greenstein's certificate, and (2) require him to operate within such definition, instead of hauling solid loads of meat with only token quantities of dairy products, their objections might well disappear. We commend these questions to the Commission.

In any event, the Commission should order a republication in the Federal Register of the ICC order and certificate as granted, with an opportunity being given the plaintiffs to offer evidence and to be heard. The Commission will then re-examine the evidence and the arguments and determine whether or not its action and order should stand or be set aside.

It is so ordered.