**FROZEN FOOD EXPRESS, INC.,**
a corporation

v.

**UNITED STATES of America and Inter-
state Commerce Commission.**

Civ. A. No. 3–4172–C.

United States District Court,
N. D. Texas,
Dallas Division.

June 3, 1971.

Phinney, Hallman, Pulley & Livingstone, by Jack L. Coke, Jr., Dallas, Tex., for plaintiff.

Brooks, Montgomery & Matthews, by Hugh T. Matthews, Jr., Dallas, Tex., for intervenor, Govan Express.

Eldon B. Mahon, U. S. Atty., Dallas, Tex., by Charles D. Cabaniss, Asst. U. S. Atty., John H. D. Wigger, Dept. of Justice, Washington, D. C., for United States.

Arthur M. Toback, Atty., Office of the Gen. Counsel, I. C. C., Washington, D. C., for I. C. C.

Before GOLDBERG, Circuit Judge, and HUGHES and TAYLOR, District Judges.

WILLIAM M. TAYLOR, Jr., District Judge.

On July 14, 1969, the Intervenor, Govan Express, filed an application with the Interstate Commerce Commission (ICC) seeking a certificate of public conven-

ience and necessity, which would allow it to transport food and laundry products from Dallas and Fort Worth, Texas, to points in Texas, Oklahoma, and western Louisiana. This application was published on August 7, 1969 in 34 Federal Register No. 150, p. 12866.

On September 4, 1969, the plaintiff filed a protest to the Govan application. According to Govan, there were six other protestants in the case as of November 4, 1969. On September 18, 1969, the ICC ordered the Govan application to be handled under the modified procedure according to Rule 247(e) (3) (49 C.F.R. § 1100.247(e) (3)). The rule generally provides that the application be processed by verified pleadings without oral hearings.

On November 4, 1969, Govan requested that a restrictive amendment be made a part of its application so that only the following authority would be sought:

> (1.) Foodstuffs and (2.) Laundry products, when moving in mixed shipments with foodstuffs, from the plant sites of and the storage facilities utilized by Beatrice Foods Company and its subsidiaries and divisions in Dallas and Fort Worth, Texas to points in Texas, Oklahoma and that portion of Louisiana west of the Mississippi River.

On December 12, 1969, the plaintiff withdrew its protest to the Govan application. The remainder of the protestants, save one, all withdrew their protests prior to March 30, 1970. On that date an employee Review Board of the Commission granted the Govan application without the proffered restrictive amendment because

> "the supporting shipper has a large number of subsidiaries (some of which bear corporate designations) in the involved origin area and many more are expected to be located there in the future. It is obvious, therefore, that enforcement and interpretative problems will be present in the sense of readily identifying which ori-

gin facilities are those of shipper's subsidiaries."

The plaintiff then on May 5, 1970 petitioned the Commission for leave to intervene and for the reopening of the proceeding for the receipt of additional evidence and for reconsideration. The Appellate Division 1 of the Commission, on July 1, 1970, allowed the plaintiff to intervene but declined to reopen the proceedings on the grounds that the findings of the Review Board were in accordance with the evidence and the applicable law and that no sufficient or proper cause appears for the reopening of the proceeding. This order of Appellate Division 1 is an administratively final order. Plaintiff filed suit in federal district court requesting the court to enjoin, set aside, and annul the orders of the Review Board and Appellate Division 1 and remand the case to the Commission for further proceedings. A preliminary injunction was also requested and entered, enjoining Govan from operating in a manner greater than that set out in the restrictive amendment that the Commission refused to accept. The preliminary injunction is effective until the case can be decided on the merits.

Plaintiff argues that because the Commission encourages amendments under Rule 247(d) (5) in order to reduce the number of protestants to expedite applications and because the Commission was silent as to whether Govan's amendment would be acceptable, the plaintiff was entitled to rely upon the Commission's silence, presume that the amendment would be accepted, and withdraw its protest. Because plaintiff's request to reopen the proceedings and allow plaintiff to introduce evidence in opposition to the Govan application was denied, it contends that the procedures involved were patently unfair and resulted in a decision which has denied it due process.

Plaintiff also contends that on the merits, the Commission abused its discretion in granting the authority to Go-

van because the findings were arbitrary, capricious, and unsupported by any substantial evidence. This argument revolves around the Commission's decision not to accept the amendment because it provided that the points of origin would be the plant sites and storage facilities utilized by Beatrice Foods Company and its subsidiaries and divisions in the Dallas-Fort Worth area. The Commission found that there were many subsidiaries and divisions in this area so that the origin points cannot be readily identified and therefore pose enforcement and interpretive problems. The plaintiff says that there is evidence to show that Beatrice Foods and its subsidiaries intended to centralize its warehouse and shipping facilities to one or a very limited number of locations in the Dallas-Fort Worth area. This, it claims, negated any reason the Commission had for refusing the amendment.

For authority, plaintiff relies upon Fox-Smythe Transportation Co. Extension-Oklahoma, 106 M.C.C. 1 (1967) to support its position that it was entitled to rely upon the Commission's silence and withdraw its protest. In that case the Commission rejected the restrictive amendments offered to eliminate opposition. There, employees of the Commission had communicated to the parties prior to the hearing that the amendments were not acceptable. Plaintiff contends that it was entitled to the same advance notice.

It also argues that because a plant site restriction has been imposed in many other cases, it should not arbitrarily be rejected here.

Plaintiff makes an analogy to F.R. Civ.P. 60(b) where a case can be reopened because of mistake or inadvertence.

In conclusion, the plaintiff relies upon Refrigerated Transport Co. v. United States, 297 F.Supp. 5 (N.D.Ga.1969), for authority to remand. There the Commission had at the hearing refused a tendered amendment and substituted a restriction of its own. The Court remanded the case, not on the merits, but to allow the plaintiff to contest the substitution.

Govan states that the only issue in the case is whether the Commission properly refused to either accept the amendment or reopen the proceedings. It then points out that plaintiff was a party in the *Fox-Smythe* case and that case cautioned,

"And protestants who withdraw from a proceeding relying upon such proposed amendments do so at their own peril and cannot be heard to complain that they were denied the opportunity to oppose the application actively." 106 M.C.C. at 8.

Govan points out that plaintiff's brief (p. 20) admits,

Frozen Food Express recognizes that the Commission is not bound by restrictions agreed to by the parties but it respectfully submits that the restrictions sought to be imposed in the instant proceeding are not inconsistent with the public interest nor are they inimical to practical and efficient regulations.

Additionally, it says that plaintiff cannot rely upon Rule 247(d) (5) for support because the rule specifically states that proffered amendments must be acceptable.

The defendants have undertaken to explain why, on the merits, the Commission's decision to grant the Govan application was supported by substantial evidence. In this respect it joins issue with the plaintiff's allegations that the supporting shipper was planning to centralize by saying this was only in the planning stage at the time and the specifics for this centralization were not yet disclosed.

As to the reliance issue, the government says that the Federal Register, in which Govan's original application appeared, warned that restrictions not acceptable to the Commission would be eliminated.

The government also undertakes to distinguish Refrigerated Transport Co.

v. United States, supra, because the application there took effect prior to the Federal Register warning requirement and prior to *Fox-Smythe*. In addition, the hearing examiner there had already approved the restriction, thereby lending credence to the idea that it would ultimately be validated.

The first barrier the plaintiff must hurdle is whether the Commission's decision not to reopen the case is in any way procedurally defective. That is, was the plaintiff entitled to rely upon the Commission's silence and assume that the amendment would be approved and thereby show good cause for reopening the proceedings?

The *Fox-Smythe* case is strong authority to the contrary. That case speaks directly to the issue:

Even in those circumstances where an applicant makes restrictive amendments at the hearing or prior to the hearing so as to eliminate all or some of the protestants, the problem is not resolved. The Commission is not, and cannot be, bound by restrictions agreed to by the parties where they achieve results inconsistent with the public interest and inimical to practicable and effective regulation. [Authorities omitted]. *And protestants who withdraw from a proceeding relying on such proposed amendment do so at their own peril and cannot be heard to complain that they were denied the opportunity to oppose the application actively.* [Authorities omitted] 106 M.C.C. at 8.

This statement comports with the Commission's rules of practice. Rule 247(d) (5) specifically provides for plaintiff's situation. It states:

(5) Where a person has a limited interest in an application, which possibly could be eliminated by a restrictive amendment to the application, which amendment must be acceptable to the Commission, it may also include in a protest filed in conformity with this paragraph an offer to withdraw

the protest in the event of acceptance by applicant and the Commission of such amendment.

The opinion in the Fox-Smythe case was written for the purpose of "discussion of the many complex problems involved in the drafting of proper commodity, territorial, and service descriptions and restrictions." In that case, the Commission quotes an earlier case saying, "Counsel for both parties are charged with the knowledge of our prior decisions and the practice which has prevailed * * *." In addition to this notice, the Federal Register warned that proffered restrictions not acceptable to the Commission would be rejected. 32 Fed.Reg. 12852.

■ The plaintiff would have this court require the ICC to pass upon the acceptability of restrictive amendments as they are tendered in order to allow the protestants to decide whether to withdraw or continue the protest. This, it argues, would be adminstratively more expeditious than would be the procedure of requiring all protestants to remain in the case until the hearing to find out whether any such amendment would be acceptable. While this may in fact be true, and we do not decide that it is, it is not this Court's function to make rules for the ICC. We find that the *Fox-Smythe* case and the Federal Register were sufficient to put the plaintiff on notice that amendments must be acceptable to the ICC and that anyone who withdrew in reliance upon a proposed amendment did so at their own peril. We can find no denial of due process here.

The *Refrigerated Transport Co.* case does not demand a remand under these circumstances. In that case the Examiner approved of three original restrictions requested by the applicant. Upon review, the Board deleted these restrictions and substituted a completely new restriction. The Court held that the plaintiffs were entitled to be heard upon the substitution question. There was no substitution here.

■ We feel compelled to point out that an application before the ICC is unlike pleadings and motions tendered in a lawsuit. Courts will normally accept the stipulations and restrictions under which the parties agree to try a case. A court's function, under our adversary system, is to resolve the dispute as it is presented by the parties. The court will not superimpose the interests of a third party upon the litigants unless, in those rare instances, their interests run afoul of what is called "public policy."

■ The ICC, on the other hand, is required to represent the public, a third party, when it grants or denies certificates of public convenience and necessity. In this capacity, it cannot defer to the parties and permit them to define the metes and bounds of the controversy.

The preliminary injunction is dissolved and the cause is hereby dismissed.