**DAILY EXPRESS, INC., and Johnson Trucking Co., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 71–457.**

United States District Court,
M. D. Pennsylvania.

May 17, 1972.

McNees, Wallace & Nurick, Harrisburg, Pa., James Muldoon, Columbus, Ohio, for plaintiffs.

Walker B. Comegys, Acting Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington D. C., for defendant United States.

Fritz R. Kahn, Seymour Glanzer, I.C.C., Washington, D. C., for defendant Interstate Commerce Comm.

Before ADAMS, Circuit Judge, SHERIDAN, Chief District Judge, and MUIR, District Judge.

## OPINION

MUIR, District Judge.

This is an action brought to set aside orders of the Interstate Commerce Commission which approved the acquisition by Daily Express, Inc. of control of Johnson Trucking Co. and the operating rights of Johnson. Daily Express, Inc. is called in this opinion "Daily" and Johnson Trucking Co. is called "Johnson." Plaintiffs contend that the approving orders (1) interpreted the certificates of public convenience of Johnson incorrectly, (2) conditioned

consummation of the acquisition upon the acceptance by Daily of certificates containing restrictive interpretations of the grants of authority to Johnson and (3) denied a companion application of Daily seeking specifically the authority which the Commission had denied Plaintiffs by such interpretations.

Jurisdiction is conferred upon this Court by 28 U.S.C. § 1336, 49 U.S.C. § 17(9), and 49 U.S.C. §§ 305(g) (h) and 5 U.S.C. §§ 701 et seq., specifically §§ 702 and 703, subject to provisions of 28 U.S.C. §§ 2284 and 2321–2325 concerning three-judge district court procedure applicable to such review.

Venue in this district is founded upon 28 U.S.C. § 1398 by reason of the fact that the principal office of Daily is located in this District.

Johnson is a common carrier authorized to transport iron and steel and heavy hauling commodities. The gravamen of Plaintiffs' case turns on the language and interpretation of its authorizations at Docket No. MC–84726 and Sub–Nos. 23 and 26. The base certificate at Docket No. MC–84726 reads as follows:

"Iron and steel, and iron and steel products, machinery, boilers, and contractors' equipment, over irregular routes,

Between points and places in Franklin County, Ohio, on the one hand, and, on the other, points and places in Kentucky, West Virginia, Indiana, Michigan, and Pennsylvania."

Sub–No. 23 (Docket No. MC–84726) reads as follows:

"Commodities the transportation of which, because of their size or weight, require the use of special equipment, and related iron and steel and iron and steel products when their transportation is incidental to the transportation by said carrier of commodities which by reason of size or weight require special equipment, over irregular routes,

Between points and places within 80 miles of Columbus, Ohio, including Columbus.

Between Columbus and points and places within 80 miles thereof (except points and places in Franklin County), on the one hand, and, on the other, points and places in Kentucky, West Virginia, Indiana, Michigan, and Pennsylvania.

Between Columbus and points and places within 80 miles thereof, on the one hand, and, on the other, points and places in Illinois and New York."

Sub–No. 26 (Docket No. MC–84726) reads as follows:

"IRREGULAR ROUTES:

Self-propelled articles, each weighing 15,000 pounds or more, and related machinery, tools, parts, and supplies moving in connection therewith,

Between Columbus, Ohio, and points within 80 miles thereof (except points in Franklin County), on the one hand, and, on the other, points in Indiana, Kentucky, Michigan, Pennsylvania, and West Virginia.

Between points within 80 miles of Columbus, Ohio, including Columbus.

Between Columbus, Ohio, and points within 80 miles thereof, on the one hand, and, on the other, points in Illinois and New York.

RESTRICTION: The operations authorized herein are restricted to commodities which are transported on trailers."

In 1964, Daily sought authority to acquire control of the stock of Johnson and to purchase all of its interstate operating authority. Shortly thereafter, Daily was granted temporary authority to operate the motor carrier properties of Johnson.

On August 24, 1965, the examiner recommended that the transaction be approved, and found, with regard to Johnson's Sub–No. 23 authority, that it contained three separate grants of authority,

each of which could be tacked with the others or with the authority granted in the base certificate. Exceptions were filed to his report.

On May 26, 1966, Division 3 of the Interstate Commerce Commission in Daily Express, Inc.,—Control and Purchase—Johnson Trucking Co., 101 M.C.C. 355, approved the transaction, subject, however, to an interpretation of Johnson's authority at Sub–No. 23, as being a single grant which prohibits the tacking of the three separate territorial paragraphs.

On August 5, 1966, Daily filed a so-called extension or safety valve application, Sub–No. 156, for authority to operate over the Johnson routes, making explicit that Daily proposed to tack the paragraphs where the commodities were the same and where there were common points of service.

"Tacking" means a carrier's ability to join two or more grants of authority by the Interstate Commerce Commission to provide service between points in one territorial grant on the one hand, and points in another territorial grant, or grants, on the other hand, via a common point or points. By the use of tacking, service could be provided here from a point in Illinois to a point in Kentucky or Pennsylvania, via any point falling within the 80-mile radius of Columbus, Ohio.

Division 3 of the Commission then ordered an opening of the transfer proceedings for further hearing on a consolidated record with the extension or safety valve application. Six carriers appeared in opposition to the consolidated proceedings but at the present time there are no protestants.

Before Division 3 acted on the consolidated transfer and extension applications, another division of the Commission, Division 1, on December 30, 1966, in Ashworth Transfer, Inc., Extension— 15,000 lb. Articles, 102 M.C.C. 404, embracing 59 related proceedings, including the application of Johnson at

Sub–No. 26, and in excess of 50 other applications, stated:

"Unless otherwise specifically restricted to prohibit tacking, an applicant may tack, through common points of authorized service, the separate grants of authority made herein."

The order did not impose any restriction against tacking on Johnson with respect to 15,000 lb. articles. On October 26, 1967, Johnson was issued a certificate of public convenience and necessity at Docket No. MC–84726 (Sub–No. 26). The territorial grants to Johnson at Sub–No. 26 were the same as those in its certificate at Sub–No. 23 except that the word "points" is substituted for the words "points and places." The certificate granted Johnson at Sub–No. 26 contains no restriction against tacking, perhaps inadvertently.

On June 26, 1969, the examiner filed his report in the consolidated acquisition and safety valve proceedings. He concurred in the prior interpretation of Division 3 that the three territorial paragraphs of the Johnson certificate at Sub–No. 23 constituted a single grant of authority and could not be tacked. He recommended denial of the related safety valve or extension application of Daily and made no mention of the authority of Johnson at Sub–No. 26 with respect to 15,000 lb. articles which had been granted during the period the acquisition proceedings were pending. The Plaintiffs filed exceptions to the examiner's report. No replies were filed by any protestants and both applications remain unopposed.

By order of June 5, 1970, Division 3, without further discussion, approved its earlier interpretation of the Johnson Sub–No. 23 authority as being a single grant, applied this interpretation to the later acquired Johnson Sub–No. 26 authority with respect to 15,000 lb. articles and approved the extension or safety valve application of Daily at Sub–No. 156, describing the authority to be issued to Daily, insofar as heavy hauling commodities were concerned, in two paragraphs, which had the effect of preventing the tacking above mentioned. John-

son and later Daily, pursuant to the temporary authority granted to Daily by the Commission, had been engaged in tacking under the authority in this case for many years.

On September 8, 1970, the Plaintiffs filed a petition for reconsideration. This was dismissed January 11, 1971.

Under 5 U.S.C. § 706 we are obliged to set aside any agency action, findings and conclusions which are arbitrary, capricious, made without observance of procedures required by law or unsupported by substantial evidence. This Court is also authorized to set aside agency action under the statute for reasons not pertinent to this case.

■ Judicial review of the acts of administrative agencies is of a limited nature. This Court, in reviewing an order made by the Commission, does not intend to substitute its judgment for that of the Commission if we are able to understand the reasoning by which the Commission arrived at the particular judgment, and even if we do not agree with that reasoning, unless, of course, we consider the reasoning clearly erroneous.

The original examiner, in the report of August 24, 1965, found that there were three separate territorial grants of authority under Johnson Sub–No. 23, each of which might be tacked with the other. Division 3 of the Commission in its first decision, that of May 26, 1965, disagreed. It stated at page 360 of 101 M.C.C.:

"[I]t is well settled that a motor common carrier may tack, at common points, separate grants of unrestricted authority regardless of whether the authorities involve regular routes, irregular routes, or a combination of both, Transport Corp. of Virginia Extension—Maryland, 43 M.C.C. 716, and the fact that the separately described portions of authority were granted in the same proceeding does not necessarily establish that they are parts of a single grant and as such may not be joined, Miller Extension—Poughkeepsie, N.Y., 61 M.C.C. 631. However, when it is clear that the

separately stated grants merely constitute what is, in effect, a single radial 'between' authority stated in two parts, such authority comprises but a single operating right, the separately described portions of which may not be tacked."

Two of the members of the division apparently concluded that it clearly appeared from the face of the certificate that only a single right was intended. The Division concluded that all three paragraphs of the Sub–No. 23 were intended to grant a single operating right, and were only expressed in three paragraphs for the purpose of avoiding duplication of part of the base certificate. The Commission recognized that the parties had been tacking in reasonable reliance upon an informal written interpretation given to them by the Commission's Bureau of Motor Carriers, on September 6, 1952. However, that interpretation was not binding upon the Commission and expressly so stated.

Commissioner Webb concurred in the result reached May 26, 1965, but stated at page 366 that while he agreed that the certificate conferred one grant of authority rather than three, he did not share the view of the majority that such an interpretation followed from the clear language on the face of the certificate. He would have looked behind the certificate to the application proceeding to determine its meaning.

Admittedly, on two separate occasions, the Commission's staff had stated that the three paragraphs of authority in Johnson's Sub–No. 23 were separate grants and could be tacked for through transportation, so long as in each instance the shipment was transported through a point of service common to the authorities being tacked. (Exhibits 19 and 21). One of these staff interpretations was for the benefit of a third party and the other was for the benefit of Daily shortly before entering into the contract of purchase here.

On its face, Sub–No. 23 appears to be three separate grants. However, the Commission between pages 361 and 363 gave careful and detailed consideration to the question of whether there was a single grant or three grants. It held that the base certificate gave Johnson, prior to the time of the Sub–No. 23 grant, authority to provide "heavy hauling" service between points in Franklin County and points in Kentucky, West Virginia, Indiana, Michigan, and Pennsylvania. Since Johnson did not hold similar authority for Illinois and New York, it was necessary, in order to avoid granting Johnson authority duplicating that which it already held, to describe the single grant in two separate paragraphs. The Division concluded that the plain meaning of the language of Sub–No. 23 certificate, giving due regard to its relationship to the base certificate, involved a single grant.

The Division went on to consider the application of Johnson which resulted in the grant of Sub–No. 23, in which Johnson stated that he wished to transport the commodities here involved (1) "between points and places *within a radius of Columbus, Ohio, including Columbus, Ohio,* on the one hand, and, on the other, points and places in Kentucky, West Virginia, Indiana, Michigan, Pennsylvania, *Illinois,* and *New York* (2) between all points and places *within 80 miles of Columbus Ohio, including Columbus, Ohio.*" The Division stated "the italicized portion of the foregoing quotation was italicized in the application and the applicant explained that the purpose of the application was to obtain an extension only as to those italicized areas in (1), and, in (2) to permit service between railheads and Columbus, on the one hand, and the plants of consignees and consignors within the 80-mile radius of Columbus." The Division stated at 101 M.C.C. page 362:

"If the certificate had exactly followed the application, therefore, no tacking could occur between the description of the rights contained in (1) and (2) of the application . .."

"Furthermore, if we were to consider that paragraph *one* of the Sub–No. 23 certificate could be tacked to

paragraph *two,* then the entire purpose of the exclusion of Franklin County would be defeated."

■ It is our view that the act of the Division in interpreting Sub–No. 23 as a single grant was not clearly erroneous, capricious, arbitrary, or did not constitute reversible error.

The Plaintiffs have argued that the Commission should not have gone behind the Certificate inasmuch as there were no findings of ambiguity. The Commission clearly stated that it was going behind the base certificate in order to insure fairness to the applicants and to achieve an equitable result. The Commission's decision was reached by an independent interpretation of the certificate at face value and its subsequent reference to the application to buttress its interpretation of the intent of the certificate at the time of issuance is in accord with a practice permitted in Andrew G. Nelson, Inc. v. U. S., 355 U.S. 554 at 558, last paragraph of footnote 3, 78 S.Ct. 496, 2 L.Ed.2d 763.

■ The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by an administrative body. Mississippi Valley Barge Line v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). Courts are not concerned with the soundness of the Commission's reasoning or with the wisdom of the decisions it may reach. Virginian Ry. Co. v. U. S., 272 U.S. 658, 665, 47 S.Ct. 222, 71 L.Ed. 463 (1927).

■ Absent arbitrariness or clear error, the commissioner's interpretation of its own certificate should not be overturned by this Court. Service Storage & Transfer Co. v. Virginia, 359 U.S. 171, 177, 79 S.Ct. 714, 3 L.Ed.2d 717 (1959). We are bound by the interpretation of the Commission unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law. We are not so convinced. We find here that there is a rational basis for the conclu-

sion of the Commission with respect to Sub–No. 23 although we may not agree with the conclusion.

In the second issue presented by this appeal, the Plaintiffs contend that the Commission's construction of Johnson's Sub–No. 26 certificate constitutes a revocation of authority in violation of 49 U.S.C. § 212(a). The territorial grant in Sub–No. 26 is substantially in the same language as the grant in Sub–No. 23 and was embraced with applications by many other carriers in Ashworth Transfer, Inc.—Extension—15,000 lb. Articles, 103 M.C.C. 404 (1966). The order granting the authority to Johnson and the others contained in ¶ 2 the following language:

"Unless otherwise specifically restricted to prohibit tacking, an applicant may tack, through common points of authorized service, the separate grants of authority made herein."

■ No specific prohibition against tacking was imposed by the Commission on Johnson. The order also provided at page 410 that no extension of territorial authority was therein granted. The Plaintiffs argue that to apply the same interpretation to Sub–No. 26 as is applied by the Commission to Sub–No. 23 would involve a modification at Sub–No. 26 in violation of § 212(a) of the Act, 49 U.S.C. § 212(a). To say that separate grants of authority were made to Johnson in *Ashworth* begs the question. The language is the same substantially as Sub–No. 23 which the Commission rationally concluded was a single grant. Consequently, the general language in *Ashworth* that an applicant may tack separate grants of authority made in *Ashworth* does not convert what the Commission has concluded to be a single grant into a multiple grant.

■ The Commission in treating Johnson's Sub–No. 26 interpreted what rights Johnson had from the beginning. This is not a modification or revocation of those rights, unless found to be clearly erroneous. Andrew G. Nelson, Inc. v.

U. S., 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed. 2d 763 (1958).

The third issue presented by this appeal is whether the Commission in its order of June 5, 1970, as affirmed by the order of January 11, 1971, in denying in part the application of Daily at Sub–No. 156 acted (1) arbitrarily or (2) applied erroneous standards or (3) reached ultimate conclusions without adequate subordinate findings or (4) reached such conclusions on the basis of conflicting findings unsupported by substantial evidence. We feel that the Plaintiffs' position on this question has merit.

■ Despite the limitations on judicial review, courts have a duty to require that administrative tribunals adhere to legal standards. Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). In *Burlington*, the court stated that the Commission must exercise its discretion within the bounds expressed by the standard of "public convenience and necessity" and for the Courts to determine whether the Agency has in fact done so, the Commission must "disclose the basis of its order" and "give clear indication that it has exercised the discretion with which Congress has empowered it. . . . The agency must make findings that support its decision . . . .."

Daily, when faced with the interpretation of Division 3 in its initial order of May 26, 1966 that there was a single grant, rather than multiple grants, filed its application at Sub–No. 156 to overcome the effects of the Division 3 decision and to seek the authority which it claimed that it and its predecessor Johnson had obtained and exercised. The orders dealing with the Sub–No. 156 proceeding consist of the examiner's recommended report served June 26, 1969, the subsequent orders of Division 3 of June 5, 1970, and January 11, 1971, and the so-called "clarifying" order of July 26, 1971.

Division 3 in its order of June 5, 1970, concluded that the evidence "warrants removal to the extent set forth in the appendix hereto, of (1) restrictions against tacking and combining the territorial description set forth in the three separate paragraphs in . . . (Sub–No. 23) . . . that, accordingly, . . (Sub–No. 156) should . . . conform with the scope of vendor's operating rights . . ., which rights as separately stated . . . may be tacked . . at common points of service . . . .."

In the appendix referred to, Division 3 set forth the territorial description in two paragraphs instead of three and thus precluded tacking within the authority to be derived from Sub–No. 23, in effect destroying the tacking which it appeared to approve in the paragraph just quoted. The order of June 5, 1970, on sheets one and two makes findings concerning removal of restrictions on tacking but contains no findings by which we may determine the Commission's reasons for denying the Sub–No. 156 application in part.

■ The Plaintiffs filed a petition for reconsideration with respect to the order of June 5, 1970, which was disposed of by the Commission on January 11, 1971, again without making sufficient findings or without engaging in sufficient discussion from which this Court can judge the reasoning of the division. The Agency's reasoning should be so clear that this court in review need not guess as to the rationale. National Trailer Convoy, Inc. v. U.S., 293 F.Supp. 634 (N.D.Okl.1968). We have the right to know the basis for the Commission's ruling and should not be obliged to speculate as to such basis. At the present time we can only guess at the Commission's rationale for its order of June 5, 1970. An appropriate order will be entered.

## ORDER

It is hereby Ordered that the Commission's orders of June 5, 1970, January 11, 1971, and July 26, 1971, be vacated and the matter remanded to the Commission for further proceedings in conformity with this Opinion.